Thomas S. CHRISTO

v.

RAMADA INNS, INC., a corporation, Xpressway Inn, Inc., a corporation, Knights of Columbus STRM GNC, an association; and Harold J. Lamboley and Virgil Dechant, trustees ad litem.

Ramada Inns, Inc., Appellant in No. 78–2551.

Knights of Columbus, Appellant in No. 78–2552.

Thomas S. Christo, Appellant in No. 78–2553.

Nos. 78–2551 to 78–2553.

United States Court of Appeals, Third Circuit.

Argued Sept. 7, 1979.

Decided Nov. 20, 1979.

As Amended Nov. 26, 1979.

William M. Wycoff, David G. Ries (argued), Thorp, Reed & Armstrong, Pittsburgh, Pa., for Ramada Inns, Inc., appellant in No. 78–2551 and cross-appellee in Nos. 78–2552, 78–2553.

Thomas F. Weis (argued), Weis & Weis, Pittsburgh, Pa., for Knights of Columbus, appellant in No. 78–2552 and cross-appellee in Nos. 78–2551 and 78–2553.

Gerald C. Paris (argued), Stephen J. Miller (argued), Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for Thomas S. Christo.

Before ADAMS, VAN DUSEN and HUNTER, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Senior Circuit Judge.

These appeals challenge an award of brokerage fees to Thomas S. Christo (plaintiff) on the sale of a motel in Pittsburgh, Pa., by the Knights of Columbus (Knights) to Airport Motels, Inc. (Airport), a subsidiary of Xpressway Inn, Inc. (Xpressway) and a franchisee of Ramada Inns, Inc. (Ramada).[1] Plaintiff sued the Knights, Xpressway and Ramada, but failed to pursue its claim against Xpressway when that corporation became involved in bankruptcy proceedings.

The claims against the Knights and Ramada were submitted to a jury and resulted in a general verdict in favor of plaintiff against the Knights for $87,500. and against Ramada for $100,000.[2] Post-trial motions by the Knights and Ramada for judgment n. o. v. and, in the alternative, a new trial were denied, and judgments were entered against the defendants in accordance with the jury verdict. These appeals followed.

Original jurisdiction in the district court was based upon diversity of citizenship. 28 U.S.C. § 1332. Jurisdiction in this court is based upon the final judgment of the district court. 28 U.S.C. § 1291.

We reverse and remand to the district court for dismissal of the claims against both defendants.

■ In reviewing the denial of these motions, all disputed issues of fact must be resolved in favor of plaintiff, the prevailing party below. *Thomas v. E. J. Korvette, Inc.,* 476 F.2d 471 (3d Cir. 1973).

The evidence at trial showed that in 1970 the Knights owned the Flying Carpet Motor Lodge, which is in the vicinity of the Greater Pittsburgh Airport and was being operated by the HCG Corporation on a long-term basis. HCG ran into financial difficulties which led the Knights to undertake proceedings to obtain possession in the Pennsylvania courts. Before the Knights obtained possession, HCG Corporation went into Chapter XI bankruptcy proceedings. Due to those proceedings, the Knights were unable to obtain possession of the Flying Carpet until January 20, 1972.

In December of 1969, Francis Romani, a principal in Airport, obtained a franchise to operate a Ramada Inn motel in the area of the Greater Pittsburgh Airport. In January or February of 1970, John Schweizer, a real estate broker, started looking for a

---

1. Plaintiff's appeal No. 78–2553 need not be reached in view of the disposition of the appeals at Nos. 78–2551 and 78–2552. Moreover, we note that the district court denied the contention underlying plaintiff's appeal, *inter alia,* on the ground that the application for prejudgment interest "was not timely made or developed at trial." *Christo v. Ramada Inns, Inc.,* Civil Action No. 73–434 (W.D. Pa., filed Sept. 29, 1978) (91a).

2. Due to our disposition of this case, we need not and do not rule on the issue of the alleged inconsistency of the verdict.

property near the Greater Pittsburgh Airport for Romani and Airport. The Knights' motel was considered, and after a series of negotiations, Airport offered to purchase the motel in July 1970. The transaction did not go through because the Knights were unable to obtain possession from HCG Corporation.

In August 1970, plaintiff began to seek a buyer for the motel by writing to various motel chains. At this time plaintiff did not have authority to sell the motel from the Knights. One of plaintiff's letters was directed to Ramada. That letter was answered by Jack Ferrell, Senior Vice President of Ramada, who was in charge of direct acquisitions.[3]

After receipt of Mr. Ferrell's letter, plaintiff contacted the Knights concerning a possible sale of the property. Plaintiff met with the representatives of the Knights and the receiver of HCG Corporation to discuss this matter on September 8, 1970. Plaintiff testified that at that meeting he was given specific instructions that the motel would be sold for $3,100,000., and that he had asserted that his commission would be 10% of the purchase price. Plaintiff further testified that at this meeting Judge Harold Lamboley, the Supreme Knight of the Knights of Columbus, told plaintiff, "Tom, well, you go right ahead and sell the place."

Shortly after the September 8 meeting, the plaintiff requested and received plans of the motel from the Knights and financial statements from the receiver. Plaintiff testified that he subsequently conferred with the Knights' Pittsburgh counsel concerning the motel on several occasions. Plaintiff passed the information he obtained concerning the motel on to Mr. Ferrell and kept him informed concerning the motel for the next year-and-a-half.

Due to the uncertainty created by the bankruptcy proceedings of HCG Corporation, nothing of importance took place between the parties after September 1970 until the Knights regained possession of the motel on January 20, 1972. At that time plaintiff attempted to initiate negotiations between the Knights and Ramada. In response to a letter from plaintiff dated January 27, 1972, Judge Lamboley sent plaintiff a letter dated February 1, 1972, stating that the Knights would not pay plaintiff a commission on any sale of the motel and that he should look to the purchaser for payment.

Plaintiff testified that on January 26, 1972, he invited Mr. Ferrell to inspect the motel and that on February 9, 1972, Mr. Ferrell agreed to meet plaintiff at the motel at 8:30 A.M. the following day, February 10, 1972. Plaintiff further testified that immediately after setting up the appointment with Mr. Ferrell he invited Mr. Dechant, Secretary of the Knights, to meet Mr. Ferrell at the motel.

On February 10, 1972, plaintiff met Mr. Ferrell at the motel. Plaintiff testified that he told Mr. Ferrell that the Knights now said they would not pay his commission and that Mr. Ferrell responded, "If they don't pay you, we'll pay you." Plaintiff shortly thereafter left the motel, and Mr. Ferrell may have met with Mr. Dechant later that day. There was no evidence that Mr. Ferrell and Mr. Dechant came to any agreement of sale concerning the motel at this or any later time.

At approximately the same time, during February and March 1972, Mr. Ferrell and Mr. Romani, of Airport, had one or more meetings. Mr. Romani testified that while meeting Mr. Ferrell in Mr. Ferrell's office, he noticed some aerial photographs of the Knights' motel. Mr. Romani testified that he immediately informed Mr. Ferrell of his franchise agreement with Ramada and asserted that the franchise gave him exclusive rights to the area surrounding the airport. Mr. Romani testified that he did not receive any plans or information about the motel from Mr. Ferrell, and Mr. Ferrell testified that he did not give Mr. Romani or anyone from Airport any information received from Christo. There was no evidence of-

**3.** Motels using the "Ramada Inn" tradename are operated in two different ways: some are owned and operated directly by Ramada, while others are owned and operated by franchisees of Ramada.

fered to contradict this testimony, and there is no evidence that Ramada took any action to obtain the motel after this meeting.

Plaintiff sent Ramada several letters after March 1972 offering his assistance; however, they were never answered.

After the Knights obtained possession of the motel, Airport renewed negotiations with the Knights and an agreement of sale was signed on October 20, 1972, with a sale price of $2,600,000.

■ When plaintiff heard that a sale had been negotiated between the Knights and a franchisee of Ramada, he brought this action seeking a commission from the Knights, Xpressway and Ramada. Plaintiff primarily alleges that the defendants arranged the sale to Airport so as to deprive him of his commission and that he was actually responsible for the sale to Airport. In reviewing the merits of plaintiff's claims, state law controls in this diversity action. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

■ In Pennsylvania certain principles of brokerage law are well established. First, ". . . a broker cannot recover a commission, even though he brought the seller and buyer together, unless he can prove a contract of employment, express or implied, oral or written, between himself and the buyer (or seller) or an acceptance and ratification of his acts by the buyer (or seller) . . .," *Axilbund v. McAllister,* 407 Pa. 46, 55, 180 A.2d 244, 249 (1962). Second, "[a] broker earns his commission when he produces a purchaser who is ready, willing and able to contract at the price and terms fixed by the vendor-principal, notwithstanding the refusal of the principal to sign the agreement of sale," *Simon v. H. K. Porter Co.,* 407 Pa. 359, 362, 180 A.2d 227, 229 (1962), or, if price and fixed terms have not been set by the vendor-principal, ". . . when [the broker] produces for his principal a satisfactory purchaser who contracts in writing with the principal for the purchase of the property, at a price satisfactory to the owner," *Matuszewski v.*

*Grisius,* 118 Pa.Super. 196, 198, 180 A. 130, 131 (1935). Third, ". . . the mere fact that the broker has carried on *negotiations* with a prospective buyer (or seller) does not entitle the broker to a commission unless his efforts constituted 'the efficient procuring cause of the sale'; . . .," *Axilbund v. McAllister,* 407 Pa. at 55, 180 A.2d at 249. This case requires the application of these principles to a complicated factual situation surrounding two separate defendants. The case against each defendant will be addressed separately.

*I. Liability of the Knights of Columbus*

The jury was charged that it could find that plaintiff had earned a commission from the Knights on one of two theories: either because plaintiff had presented the Knights with a ready, willing and able buyer in Ramada Inns, or because plaintiff was the procuring cause of the sale of the motel to Airport. Neither ground is tenable.

To establish either claim, plaintiff must prove all three of the above-cited requirements. With respect to the first requirement, plaintiff offered sufficient evidence of both an express and implied contract with the Knights to sell their motel to have the question of the formation of a contract properly sent to the jury. There was evidence that an officer of the Knights had told plaintiff, "Tom, you go sell it," and there was evidence of a course of conduct, including meetings and exchanges of information between the Knights and plaintiff, from which the jury could find the formation of either an express or implied in fact contract.

■ To recover under the first theory, plaintiff must prove that Ramada was a ready, willing and able buyer on February 10, 1972. This is the only means by which he can prove the second element of his claim, as it is undisputed that no written contract of sale was formed. However, there was no evidence that Ramada was ever ready and willing to pay the $3,100,-000. specified by the Knights in their Sep-

tember 8, 1970, meeting with plaintiff.[4] Neither was there any evidence that Ramada was ever ready and willing to pay any other price which may have been requested by the Knights. Accordingly, as a matter of law, there was insufficient evidence to support a finding that plaintiff had earned a commission from the Knights upon introducing Mr. Ferrell to Mr. Dechant.

■ Plaintiff's second theory of recovery against the Knights is that he earned a commission by being responsible for the sale of the motel to Airport. Having submitted evidence of a contract and a sale of the property, the jury could have found that plaintiff had satisfied the first two requirements needed to recover a commission under this theory. However, he must also prove that he was the efficient procuring cause of the sale to Airport, the third requirement. To accomplish this, plaintiff must prove that Ramada gave the information provided by plaintiff to Ferrell about the motel to Airport, which caused Airport to undertake the purchase.[5]

Plaintiff has failed to produce sufficient evidence that such information was conveyed for the issue of his efficient procuring cause to be presented to the jury. Plaintiff's evidence consisted of three pieces of circumstantial evidence. First, there was evidence that Mr. Ferrell and Mr. Romani met and discussed the Flying Carpet Motor Lodge (as well as other motels) sometime around February 1972. This provided an opportunity for the information obtained from plaintiff to be conveyed to Airport. However, the uncontradicted testimony of Mr. Ferrell and Mr. Romani was that no such information was conveyed. Mr. Romani testified that at the meeting he only asserted his prior claim on the facility due to his franchise in the region and that Mr. Ferrell was surprised that he had not previously been informed that the area was under franchise. Second, there was evidence that Ramada might earn some profit from Airport's operation of the motel under the franchise agreement. Equally, Ramada might earn a profit through direct acquisition if the motel was successful. Third, there was evidence that Mr. Ferrell did not answer plaintiff's two letters offering assistance in closing a deal, which were received after the meeting with Mr. Romani.

In light of the precedent of *Queen v. Commonwealth Trust Co.*, 64 F.2d 946 (3d Cir.), *cert. denied*, 290 U.S. 662, 54 S.Ct. 77, 78 L.Ed. 573 (1933), this evidence is legally insufficient to justify submitting the issue of efficient procuring cause to a jury. In *Queen* the plaintiff sought a commission on the sale of a stock interest in a railroad company to the Pennsylvania Railroad Company (PRR). Plaintiff discussed the

---

**4.** Insofar as the sale to Airport is concerned, it was not for the $3,100,000. allegedly stated to plaintiff as the sales price in September 1970 by the Knights.

**5.** In this case an agency relationship between Ramada and Airport cannot be presumed. As a result of a request by Ramada's counsel at 828a, we note the Judge stated that he would include the following language in his charge (833a):

"Finally, the mere fact that there exists a franchise relationship between Ramada Inns and Xpressway Inns, or whatever the name of the franchisee was, does not, in and of itself, prove any agency with respect to one of the parties acting for the other in independent negotiations. The franchisor and the franchisee are separate, independent corporate entities and each can negotiate for and purchase real estate on its own account, and the mere fact that one of these companies does have a franchise or license to operate as a Ramada Inn and display the name and so

on, and all of the features are incidents of the franchisor-franchisee relationship, that in and of itself does not warrant finding that either the franchisor is agent for and acting for the franchisee or that the franchisee is agent for or acting for the franchisor, so that that in itself does not prove anything, . . ."

No objection to such charge was made by plaintiff when the court asked if there are "any further requests" (834a). Moreover, the first two sentences of paragraph Thirteenth on page 6 of the License Agreement between Ramada and Airport (plaintiff's Exhibit 4-93a) provides that:

"The relationship of the parties is that of independent contractor. The parties hereto are completely separate entities, not partners, joint venturers or agents of the other in any sense, and neither has the power to obligate or bind the other in any way."

possibility of a sale of the stock with two vice presidents of the PRR, who did not have authority to purchase the stock for the PRR. The PRR subsequently purchased the stock from one of its directors, who had obtained the stock for the railroad. The vice presidents testified that they had not conveyed any information received from the plaintiff to anyone in the PRR with authority to acquire the stock. This evidence showed opportunity to convey the information, motive to set up the acquisition through the director so as to deny plaintiff a commission, and a time frame from which it could be inferred that plaintiff's information had caused the PRR to undertake the acquisition. The trial court granted a directed verdict in favor of the defendant, which was affirmed by this court.

The jury may not make a finding of efficient procuring cause based upon speculation. As noted in *Queen, supra* at p. 948:

"Such a situation as is here presented commonly arises in the business world where two or more men are struck with a similar business idea and attempt to carry it out independently of each other."

Thus, it was error for the district court to charge the jury that it could find that plaintiff had earned a commission from the Knights by being the efficient procuring cause of the sale to Airport. Knights was entitled to have its motion for a judgment n. o. v. granted.

## II. *Liability of Ramada Inns*

■ The above conclusions lead to a similar result with regard to plaintiff's claims against Ramada. The jury was charged that it could find that Christo had earned a commission from Ramada Inns either because Christo had presented Ramada with a ready, willing and able seller in the Knights on February 10, 1972, or because Christo was the efficient procuring cause of the sale to Airport, an agent of Ramada. Again, neither of these claims is supportable.

Assuming, arguendo, that plaintiff had an express contract [6] of employment with Ramada based upon Mr. Ferrell's promise of February 10, 1972,[7] plaintiff's claims against Ramada fail as a matter of law for reasons similar to those defeating his claims against the Knights.

Plaintiff's first theory is that he earned a commission from Ramada by providing Ramada with a ready, willing and able seller in the Knights on February 10, 1972. To establish the second element of this claim, plaintiff must show evidence of an employment contract with Ramada specifying fixed terms for the acquisition of the motel. Plaintiff's evidence of a contract consisted solely of Mr. Ferrell's statement that "If they don't pay you, we will." The jury at most could find that a general authority was produced to secure terms for the purchase of the property which would be acceptable to Ramada. Thus, the ready, willing and able standard was inapplicable, and

---

**6.** Plaintiff also requested and received a charge of implied contract against Ramada. However, as plaintiff admits that he was acting as the Knights' agent until February 10, 1972, and that Ramada had no dealings with plaintiff after February 10, 1972, there was no course of conduct from which an implied in fact contract could be found.

**7.** Ramada asserts that there was no consideration given for Mr. Ferrell's promise of February 10, 1972. However, plaintiff's assertion that he relied upon Mr. Ferrell's promise by refraining from offering the property to other potential purchasers could create a binding obligation under the theory of promissory estoppel. Restatement of the Law of Contracts, § 90 (1932).

With reference to plaintiff's letter of September 13, 1979, relying on *Baumbach v. Seip,* 442

Pa. 443, 275 A.2d 71 (1971), as its principal support for affirmance of the judgment against Ramada on the consideration issue, we note that the factual situation there was significantly different from that presented by this record. Baumbach was originally contacted by the purchaser to acquire land. He gave evidence that as broker he obtained the seller's authority to sell three properties and that the seller had subsequently made statements ratifying that authority. The Pennsylvania Supreme Court held that Baumbach had made out a case against the seller in this situation. The directed verdict for the purchaser granted by the trial court was affirmed. This decision supports reversal of the judgment against Ramada in this case.

plaintiff would have to prove the existence of a written agreement between Ramada and the Knights to satisfy the second element of this claim. As a written agreement between Ramada and the Knights was never formed, it was error for the district court to charge the jury that they could find that plaintiff had earned a commission from Ramada upon introducing Mr. Dechant to Mr. Ferrell on February 10, 1972, on any theory.

Plaintiff's second claim against Ramada is that he was the efficient procuring cause of the sale to Airport. This theory is legally insufficient for the same reasons stated above in the discussion of plaintiff's parallel claim against the Knights. The jury could not find that plaintiff was the efficient, procuring cause of the sale, as there was insufficient evidence that the information plaintiff supplied Mr. Ferrell was conveyed to Mr. Romani or in any way contributed to Airport's decision to purchase the motel. Accordingly, Ramada was entitled to have its motion for a judgment n. o. v. granted.

The district court judgment will be reversed and the case remanded to the district court for entry of judgment n. o. v. in favor of both the Knights and Ramada.

ADAMS, Circuit Judge, concurring in part and dissenting in part.

Although I concur in the majority's disposition of Thomas Christo's claim against the Knights of Columbus, I am unable to agree that no reasonable jury could find in favor of Christo on his claim against Ramada Inns, Inc. Because I believe there was error in the charge to the jury, however, I would remand the case for a new trial of Christo's claim against Ramada.

In reviewing a decision by a district court declining to enter judgment notwithstanding the verdict, appellate courts are "bound to view the evidence in the light most favorable to [the nonmoving party] and to give it the benefit of all inferences which the evidence fairly supports, even though contrary inferences might reasonably be drawn." *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 696, 82

S.Ct. 1404, 1409, 8 L.Ed.2d 777 (1962) (footnote omitted). *See Venzie Corp. v. United States Mineral Products Co., Inc.*, 521 F.2d 1309, 1312 (3d Cir. 1975). This standard is designed, in large part, to accord proper deference to the constitutional guaranty of trial by jury. Thus, before this Court orders the entry of judgment notwithstanding a jury's verdict, despite the refusal by the trial judge to do so, it should be certain that the evidence cannot, under any reasonable interpretation, be construed to support a decision in favor of the nonmoving party.

Airport Motels, Inc., a Ramada Inns franchisee, purchased the Flying Carpet Motel from the Knights of Columbus. One of Christo's claims was that Airport in effect was Ramada's alter ego for the purpose of obtaining the motel. Christo alleged that he was the efficient procuring cause of the sale of the motel because Ramada conveyed to Airport information regarding the motel that Christo had furnished to Ramada. According to Christo, Ramada would benefit from Airport's acquisition of the motel because, as the franchisor, it would receive a percentage of Airport's gross income from the motel.

Unlike the majority, I believe that sufficient evidence of a reciprocal relationship between Airport and Ramada was presented to warrant submission to the jury of Christo's claim against Ramada. It is undisputed that it was Christo who first informed Ramada of the availability of the Flying Carpet Motel. Christo and Jack Ferrell, Ramada's senior vice-president, met on February 10, 1972 to discuss Ramada's interest in purchasing the motel. According to Christo, he told Ferrell that the Knights had disclaimed responsibility for his commission and that Ferrell responded: "If they don't pay you, we'll pay you." Later that month, Ferrell met with Francis Romani, an officer of Airport. Both men testified that they discussed Ramada's desire to repurchase some of the franchises it had previously sold to Airport. They also said that, at the meeting, they first learned of the other's interest in obtaining the Flying Carpet Motel. Both denied that Ferrell

gave Romani any information he had obtained from Christo about the motel. Christo testified that, after February 10, 1972, Ferrell stopped communicating with him about the Flying Carpet Motel and refused to answer his calls and letters. In his testimony, Ferrell stated that Ramada sought to obtain a balance of approximately seventy to eighty percent franchised motels and twenty to thirty percent corporate owned and operated motels. He also acknowledged that Ramada, as franchisor, would receive a royalty fee of three percent of the gross room sales from Airport's operation of the Flying Carpet Motel.

Although I would not necessarily conclude on these facts that a reciprocal relationship existed between Ramada and Airport, neither can I conclude that no reasonable jury could so find. Giving Christo the benefit of all inferences that might reasonably be drawn, as this Court is required to do before granting judgment notwithstanding the verdict, I believe that he has made out a colorable claim. A jury, in my view, could infer from the testimony that Ferrell actually conveyed to Romani information obtained from Christo regarding the desirability of acquiring the motel in question, and that Ferrell did so because Ramada would profit from Airport's operation of the motel as a Ramada Inns franchise. The jury then might conclude that Christo was the effective procuring cause of the sale to Airport, and that Airport was acting, at least in part, as Ramada's representative in the acquisition. A conclusion that Airport acted as Ramada's alter ego would be bolstered by the testimony that, under the circumstances, it might have been more profitable for Ramada to franchise the motel instead of owning and operating it itself. Consequently, I dissent from the majority's decision to order judgment in favor of Ramada, notwithstanding the jury's verdict for Christo.

Inasmuch as I believe that the jury was improperly charged regarding Christo's claim against Ramada, however, I would not affirm the judgment. Christo conceded that he was not seeking separate commissions from both Ramada, the buyer, and the Knights of Columbus, the seller. He also testified that, after he told Ferrell that the Knights would not pay his commission, Ferrell responded that if the Knights didn't pay him, Ramada would do so. This statement is the primary basis for the contractual claim against Ramada. Nevertheless, the charge instructed the jury that the Knights and Ramada might be held jointly liable for Christo's commission.[1] Ramada made a timely objection to this portion of the instructions. As I read the record, the statement regarding joint liability was inconsistent with the evidence presented by Christo. The submission of the case under a joint liability theory therefore was not supported by the evidence, even if every reasonable inference is drawn in favor of Christo. Because the jury may have predicated its verdict on the joint liability theory, it is not certain that the jury found that Christo had a brokerage agreement with Ramada, or that Airport acted as Ramada's agent.

Accordingly, I concur in part I of the majority's opinion, dissent from part II, and would remand Christo's claim against Ramada for a new trial.

1. The instruction stated:
   Conceivably both the buyer and seller might have employed him and both might owe him a commission. In such a case I don't know what the ethics of the real estate profession is, [sic], but the Plaintiff here is seeking only one commission. It may be that two people would be obliged to pay it. He's not asking for a double commission, one from the buyer and one from the seller, but you must consider each Defendant separately and see whether either of them has obligated itself to pay under the rules of Pennsylvania law, which I have mentioned. In other words, was there an employment and were the services of the broker the real, genuine, efficient, actual procuring cause to bring about the sale.
   App. 805a–806a.