555 A.2d 210

**STROUT REALTY, INC., Appellant,**

v.

**Grace E. HAVERSTOCK, Appellee.**

Superior Court of Pennsylvania.

Argued Dec. 6, 1988.

Filed March 6, 1989.

Lawrence L. Newton, Huntingdon, for appellant.

David A. Ody, Huntingdon, for appellee.

Before WIEAND, OLSZEWSKI and TAMILIA, JJ.

OLSZEWSKI, Judge:

This is an appeal from an order of the trial court denying appellant's motion for post-trial relief following a verdict in favor of appellee. For reasons discussed below, we reverse.

On July 20, 1983, appellant and appellee entered into a Business Property Listing Agreement (hereinafter "agreement") for the sale of a funeral home located in McConnellstown, Huntingdon County. The agreement provided in pertinent part:

> I (we), the seller(s), employ you to procure a purchaser, ready, willing and able to buy this property at the listed price and terms, or at a lower price and terms acceptable to me and to accept a deposit thereon....

> If you procure a purchaser as defined above, I agree to pay you a commission of 10% of the selling price, or a minimum commission of $200, whichever is greater....

> I reserve the right to sell the property to a buyer procured by myself or through another agent and in such case no commission or other charge shall be due you, provided such sale or transfer is not made directly or indirectly to or through your prospect.... The listing of this property, and the continued endeavor of STROUT REALTY, INC. or its representatives to sell the same shall constitute a good and sufficient consideration for this agreement.

This agreement is irrevocable but shall terminate with the sale of the property or by either party giving a withdrawal notice in writing which shall become effective thirty days from the date received. This agreement shall expire one year from date without notice unless otherwise terminated as above, or unless I renew or extend it in writing. However, if within six months after the termination date of this agreement, I sell or transfer this property to a prospect procured by you prior to its termination, I shall pay you your commission....

On January 16, 1984, Burgess A. Smith, an agent of appellant, contacted Reverend F. Tim Shafer regarding the subject property. Reverend Shafer, pastor of Heritage Independent Baptist Church, was looking for a permanent meeting place for his congregation. Reverend Shafer informed Mr. Smith that he would contact him if purchase of the property was feasible. Subsequently, on January 16, 1984, Mr. Smith mailed appellee a report concerning his contact with Reverend Shafer.

Mr. Smith showed the property to Reverend Shafer on February 14, 1984. Appellee was also present during the inspection of the building. Reverend Shafer expressed an interest in the property subject to the procurement of financing.

On June 9, 1984, Reverend Shafer informed Mr. Smith that he was in contact with representatives of Stewardship Consultants, Inc. (hereinafter "SCI"), a consulting firm that finances and/or purchases church buildings for young and/or financially troubled congregations. Mr. Smith, on the same day, mailed appellee an information report notifying her that Reverend Shafer was negotiating financing with SCI and the representatives of SCI would inspect the property.

On June 14, 1984, appellee showed the property to representatives of SCI and Reverend Shafer. Mr. Smith was not notified of the meeting and when asked, appellee indicated that a realtor was not involved. SCI negotiated with appellee to purchase the property for $70,000. Reverend Shafer

subsequently negotiated with SCI to rent the property with an option to purchase. By deed dated October 12, 1984, appellee sold the property to SCI.

Appellant commenced suit to recover a ten percent commission from the sale of the property, plus interest and costs. The case was referred to arbitration. Following a hearing, the arbitrators found for appellant in the amount of $7,000.00. Appellee appealed from the award of the arbitrators, and, following a non-jury trial on December 19, 1985, the trial court decided in favor of appellee. The court entered judgment following denial of appellant's post-trial motions. This timely appeal followed.

Appellant urges that the trial court erred in refusing to award appellant a sales commission. Specifically, appellant asserts that it is entitled to a commission because: (1) its agent "indirectly" secured the sale of the subject property through Reverend Shafer; and (2) appellee acted in bad faith with intend to defraud appellant. In this Commonwealth, certain principles of brokerage law are well established. First, a broker cannot recover a commission unless he can prove a contract of employment. *Christo v. Ramada Inns, Inc.*, 609 F.2d 1058, 1061 (3rd Cir.1979), *quoting Axilbund v. McAllister*, 407 Pa. 46, 55, 180 A.2d 244, 249 (1962). Second, a real estate broker becomes entitled to his commission when he presents a purchaser who is ready, willing and able to purchase the property upon terms satisfactory to the seller. *Zitzelberger v. Salvatore*, 312 Pa.Super. 402, 458 A.2d 1021 (1983), *citing Dixon Estate*, 426 Pa. 561 n. 2, 233 A.2d 242, 244 n. 2 (1967); *Sork v. Rand*, 422 Pa. 512, 517, 222 A.2d 890, 893 (1966); *Kizer and Associates, Inc. v. Naylor*, 254 Pa.Super. 143, 145, 385 A.2d 566, 567 (1978); *Shumaker v. Lear, et al.*, 235 Pa.Super. 509, 512, 345 A.2d 249, 251 (1975); *White Realty and Insurance Agency Co. v. Moreland et ux.*, 215 Pa.Super. 423, 427, 259 A.2d 461, 463 (1969). Third, "the mere fact that the broker has carried on *negotiations* with a prospective buyer ... does not entitle the broker to a commission unless his efforts constituted 'the efficient procuring cause of the

sale...' " *Axilbund, supra* (citations omitted); *see also Christo, supra.* Moreover, when the prospective buyer and the broker-agent fail to reach an agreement and there is a break in their negotiations, and, at a later date, the property is sold to the same prospective buyer, the original broker is not entitled to a commission. *Axilbund, supra.*

Essentially, appellant's theory of recovery is that he earned a commission by being responsible for the sale of the funeral home to SCI. To establish its entitlement to a brokerage commission, appellant had to prove all of the above-cited requirements. There is no question that there was a contract of employment between appellant and appellee. The agreement was an open non-exclusive listing agreement under which appellee non-exclusively authorized appellant to sell her building while retaining the right to sell the property herself. Moreover, because there was evidence of a sale of the property on appellee's terms, the trial court could have found that appellant satisfied the second requirement needed to recover a commission. *See Christo v. Ramada Inns, Inc.*, 609 F.2d 1058, 1062 (3rd Cir.1979); *see also infra.* The issue becomes, therefore, whether appellant was the efficient procuring cause of the sale to SCI.

To satisfy the third requirement, appellant had to prove that Reverend Shafer gave the information provided by appellant to SCI, which caused SCI to undertake the purchase. *Id.* In *Christo*, the plaintiff-broker sought to recover a commission for the sale of a hotel to Airport Motels, Inc. (hereinafter "Airport"). The broker's theory of recovery was that, although he had never had contact with Airport, Airport received the information from representatives of Ramada Inns, Inc. (hereinafter "Ramada"), to whom the broker had provided information. Therefore, the broker asserted that he was the efficient procuring cause of the sale.

In support of his position, however, the broker offered circumstantial evidence that the court found insufficient to

sustain the broker's theory of recovery.[1]  Importantly, the court emphasized that there was uncontradicted testimony from representatives of Airport and Ramada that information obtained by Ramada from the broker was never conveyed to Airport.

In resolving this issue, the *Christo* court, applying Pennsylvania law, opined:

> In light of the precedent of *Queen v. Commonwealth Trust Co.*, 64 F.2d 946 (3d Cir.), *cert. denied*, 290 U.S. 662, 54 S.Ct. 77, 78 L.Ed. 573 (1933), [the evidence presented herein] is legally insufficient to justify submitting the issue of efficient procuring cause to a jury.  In *Queen* the plaintiff sought a commission on the sale of a stock interest in a railroad company to the Pennsylvania Railroad Company (PRR).  Plaintiff discussed the possibility of a sale of the stock with two vice presidents of the PRR, who did not have authority to purchase the stock for the PRR.  The PRR subsequently purchased the stock from one of its directors, who had obtained the stock for the railroad.  The vice presidents testified that they had not conveyed any information received from the plaintiff to anyone in the PRR with authority to acquire the stock.  This evidence showed opportunity to convey the information, motive to set up the acquisition through the director so as to deny plaintiff a commission, and a time frame from which it could be inferred that plaintiff's information had caused the PRR to undertake the acquisition.  The trial court granted a directed verdict in favor of the defendant, which was affirmed by this court. The jury may not make a finding of efficient procuring cause based upon speculation.  As noted in *Queen, supra* at p. 948:

---

1. Specifically, the broker's evidence consisted of the following three pieces of circumstantial evidence:  (1) proof of a meeting between a representative of Ramada and a representative of Airport;  (2) evidence that Ramada may have earned a profit from Airport's operation of the motel under a franchise agreement;  and (3) evidence that Ramada's representative did not answer two letters from the broker mailed after the meeting with Airport's representative.

"Such a situation as is here presented commonly arises in the business world where two or more men are struck with a similar business idea and attempt to carry it out independently of each other."

*Christo, supra,* at 1062–1063.

Instantly, the evidence presented at trial clearly establishes that Reverend Shafer conveyed the information obtained from Mr. Smith to SCI. Reverend Shafer testified as follows:

[Appellant's attorney]: Reverend Shafer, could you tell us how you were first contacted and by whom concerning the property which is now your church?

[Reverend Shafer]: [Mr.] Smith contacted me by telephone, made me aware.

\* \* \* \* \* \*

[Appellant's counsel]: Did, in fact, Mr. Smith get back to you sometime in 1984?

[Reverend Shafer]: Yes, he did.... I'm not sure what his initial question was but within that conversation he wanted to know of our interest. I think I told him that in April I had been in California and had been in contact with some people in Florida that helped young churches get started and I really didn't know what was going to transpire in regards to that contact with the group in Florida.

[Appellant's counsel]: You told him about the group in Florida. Did you tell him they were coming up?

[Reverend Shafer]: At the time of our phone conversation, I was working with them to come. I didn't know the details at the time.

[Appellant's counsel]: You mentioned you had heard about this group from Florida. Tell us what this group does.

[Reverend Shafer]: Stewardship Consultants, Incorporated is an organization that was put together by a pastor, mortgage broker and attorney, retired, for the purpose of helping either ... churches that were close to bankruptcy

or young churches to get into building programs when conventional financing was not appropriate.

[Appellant's attorney]: Is it fair to characterize this group then as primarily a financing group to get churches started?

[Reverend Shafer]: Yes, yes, I would agree with that statement.

[Appellant's attorney]: At that point in time in June of 1984 when you talked to Mr. Smith on the phone and specifically, I believe, you testified it was June 9, 1984.

[Reverend Shafer]: That would be, yeah.

[Appellant's attorney]: Your hope was that this church group would become interested enough to enable you to secure this property, is that correct?

[Reverend Shafer]: Yes.

[Appellant's attorney]: Did, in fact, representatives from Stewardship Consultants, Incorporated come to Huntingdon County to look at this property?

[Reverend Shafer]: That's correct, they did.

[Appellant's attorney]: Do you know when they came to look at the property?

[Reverend Shafer]: Yes. Our church at our expense flew them into Pittsburgh on June the 13th. I picked them up by automobile at Pittsburgh, brought them to the Huntingdon area.

Transcript at 20–23.

We find that appellant was the efficient procuring cause of the sale of the property to SCI. If it had not been for appellant's initial contact with Reverend Shafer, the sale to the Florida-based SCI, in all probability, never would have occurred. Moreover, while we acknowledge that appellant bears the burden of proof in this case, appellee has presented no evidence (and the record is devoid of any indication) that SCI learned of the subject property from anyone other that Reverend Shafer. Most importantly, Reverend Shafer's testimony clearly establishes that he conveyed the information provided by appellant regarding the property to

SCI. This fact satisfies the test for efficient procuring cause delineated in *Christo*.

Finally, we note that the time frame of the sale permits appellant to recover a commission, for the contract provided that "... if within six months after the termination date of this agreement, I sell or transfer this property to a prospect procured by you prior to its termination, I shall pay you your commission." [2]

We hold that appellant is entitled to a 10% commission for the sale of the funeral home, with interest from October 12, 1984, and costs. The order of the trial court is reversed. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

2. The record indicates that SCI inspected the property on June 14, 1984, the listing agreement expired on July 20, 1984, and the deed was transferred on October 12, 1984.