E. T. NOLLNER AND LILA V. NOLLNER, APPELLANTS, v. FLOYD A. THOMAS, RESPONDENT.

No. 7145

March 28, 1975                    533 P.2d 478

*David C. Polley*, of Las Vegas, for Appellants.

*Deaner & Deaner,* of Las Vegas, for Respondent.

# OPINION

By the Court, BATJER, J.:

The appellants were the owners of real property known as the "Hitchin' Post Motel" located in Clark County, Nevada. On September 4, 1969 they engaged the respondent, a licensed real estate broker, to assist them in the sale of that property and executed a non-exclusive listing agreement for a period of one hundred eighty (180) days, with a grace period of sixty (60) days. If a sale had been made during the grace period to anyone with whom respondent had negotiated during the original term, a commission would be paid.

During the 180 days respondent introduced the ultimate buyer, James D. Childress, to the appellants, and exhibited the real property to him. During the original term respondent also had inserted advertisements concerning the real property in the local newspapers.

The listing agreement expired on March 4, 1970, and up to that time no written offers of purchase were submitted by respondent to the appellants. On March 10, 1970, and again on March 13, 1970, the respondent, on behalf of Childress, tendered written purchase offers to appellants. Both offers were rejected. On March 29, 1970, appellant, E. T. Nollner, and respondent met to discuss the terms upon which appellants would sell, and at this meeting Nollner agreed to reduce the asking price by $5,000 to $170,000, and suggested that respondent agree to reduce his commission by a commensurate amount. Respondent refused.

Respondent contacted appellants on April 4, 1970, and again on April 7, 1970, regarding the sale of the property. On April 7, 1970, Nollner, in a conversation with respondent, indicated that he was considering taking the property completely off the market. On that same date Nollner made application to change the zoning on the property to accommodate an overnight campground. Such zoning had been an integral factor in both of the written offers made by respondent on behalf of Childress. Respondent indicated that he may have had some contact with appellants and Childress concerning the property after April 7, 1970, but his testimony is very vague and indefinite. The 60-day grace period expired on May 5, 1970.

After July 1, 1970, Childress directly contacted appellants concerning the possibility of a three-way trade involving the Hitchin' Post, the Childress residence, and the residence of Lester and Elizabeth Simmons. Prior to that time the negotiations had become stagnant because appellants could not use and did not want the Childress two-story home which Childress needed to dispose of so he could move to the Hitchin' Post. An escrow was opened on July 16, 1970, and the entire three-way transaction was concluded on July 31, 1970.

Upon learning of the transaction, respondent made a demand for a commission which was rejected by appellants, and suit was brought. After a trial before the court, without a jury, respondent was awarded a judgment in the amount of $9,756, from which this appeal is taken.

Appellants contend that the trial court erred as a matter of law in its interpretation of the listing agreement, as well as in its conclusion that respondent was the procuring cause, and that

appellant acted in bad faith in consummating the sale with Childress.

The trial court seems to base its finding of appellants' bad faith upon the fact that Nollner (1) had listed the property for sale for $200,000 with other brokers; (2) had applied to have the zoning of the property changed from H–2 (highway frontage) and R–E (residence estates) to T–C (mobile home park); and (3) had told respondent that, "I'm seriously considering taking the property off the market altogether."

The threat of Nollner "to take the property off the market altogether," or words to that effect, upon which the trial court finds "bad faith," was meaningless to this transaction. Such a statement, made on April 7, 1970, could not possibly have prejudiced respondent and amounted to bad faith against him, because during the grace period respondent had a continuing right, regardless of appellants' actions or intentions, to sell the property upon the terms of the original agreement to anyone to whom he had shown the property during the original six (6) months. On the other hand, since respondent had no right during the grace period to show the property to or negotiate with new prospects, he therefore had no interest or right in having the property remain on the market. The fact that appellants listed the "Hitchin' Post Motel" property with another broker on February 16, 1970, at a price of $200,000 was not significant and certainly not prejudicial to respondent. He did not have an exclusive listing, and the higher price could have only enhanced his chances to sell it for $175,000, and upon the terms of his listing agreement. The listings on June 7, 1970 and July 1, 1970 at a price of $200,000 were executed at a time well beyond respondent's grace period and could not be considered prejudicial to him. Appellants' proceeding to obtain a change of zoning to the classification of "mobile home park" during the grace period could do nothing but improve respondent's chances to procure a sale with Childress or anyone else with whom he might have acquainted the property during the original six months. It did nothing to detract from the value or salability of the property.

This record reveals no substantial evidence whatever of bad faith relevant to the pertinent aspects of these transactions. For respondent to receive a commission under the open listing agreement in the absence of fraud or bad faith on the part of the seller, it was necessary for him to have shown the property to Childress and then to have produced Childress as a ready, able and willing buyer upon the price, terms and conditions in

the listing agreement on or before May 5, 1970, the last day of the sixty (60) day grace period. It clearly appears that neither Childress nor any other prospective purchaser who had been introduced to the property during the term of the original listing contract was produced by respondent within the prescribed period. The record indicates that the Childresses were not ready to purchase the "Hitchin' Post" property until they were able to dispose of their home, which appellants could not use and did not want. It wasn't until after July 1, 1970, when a three-way trade was worked out with Lester and Elizabeth Simmons, that the sale was consummated.

Here the action is based on a listing agreement.[1] The right of the respondent to compensation must be governed by that agreement. It did not make the broker's commission dependent upon the respondent being the "procuring cause" but upon the fact that he would sell the property in accordance with the terms of the agreement. To avoid disputes the parties fixed the conditions upon which a commission would be payable and agreed upon the provision for payment if a sale was made in accordance with the contract terms. Its terms are clear and unambiguous. When the trial court concluded that the respondent was nevertheless the "procuring cause" it limited the meaning of the words of the agreement and read into it a clause or condition which does not exist. See Nichols v. Pendley, 331 S.W.2d 673 (Mo.App. 1960). Cf. Frederick A. Schmidt, Inc. v. Brock, 127 N.E.2d 219 (Ohio App. 1953); Neigut v. McFadden, 278 S.W.2d 218 (Tex.App. 1955).

A broker employed for a definite period of time to effect a

---

[1] The listing agreement executed by the parties on September 4, 1969, reads in pertinent part:

"OPEN LISTING: In consideration of the services of the broker, the owner lists with the broker for a period of *180* days from date hereof the property described above and grants to the broker the right to sell the same within said time in accordance with terms set out above and to accept a deposit thereon subject to prior sale.

"In case of sale or exchange being made by such broker or through such broker's effort, the owner agrees to pay broker as commission *six* percent of the selling price obtained.

"The owner will immediately notify agent in writing of withdrawal of the property from the market or change of terms of sale.

"In case a sale is made within sixty (60) days after termination of this listing to parties with whom said broker negotiated during its life and said broker notifies me personally or by mail, in writing, I agree to pay said broker the commission herein provided."

sale of property must negotiate the sale within the time fixed to be entitled to his commission. Brackett v. Schafer, 252 P.2d 294 (Wash. 1953). Even assuming that the written contract did not preclude suit on an implied contract, there is still no basis upon which to support the judgment in this case, which would of necessity rest on the dealings between respondent, appellant and Childress subsequent to May 5, 1970, the last day on which the listing agreement controlled. There is no evidence in the record of any communication between respondent and appellants or respondent and Childress between May 5, 1970 and the date of the sale. Cf. Smart & Golee, Inc. v. Delany, 213 N.E.2d 27 (Ill.App. 1965).

Respondent and the trial court both rely heavily upon Humphrey v. Knobel, 78 Nev. 137, 369 P.2d 872 (1962). We find that case to be inapposite. There the property was sold upon exactly the same terms and for the same price as those originally made by Larson through Humphrey to Knobel 14 days after an exclusive listing had expired. In *Humphrey* there was no grace period in the listing agreement and this court held that a broker is entitled to a commission if the transaction is closed by the owner directly with the buyer within a reasonable time after the expiration of the contract in the absence of fraud or bad faith.

Here the 60-day grace period was intended to protect the respondent's efforts to sell the property. After the expiration of the original term of 180 days, the appellants were free to sell their property to anyone except those introduced to the property by respondent during that term. After the 60-day grace period expired appellants were free to sell the property to anyone without owing a commission to respondent.

The judgment of the district court is reversed, with instructions to enter judgment for the appellants.

GUNDERSON, C. J., and ZENOFF, MOWBRAY, and THOMPSON, JJ., concur.