NELL J. REDFIELD, MAXIT FINANCIAL CORPORATION, A NEVADA CORPORATION, T.M.S. ASSOCIATES, A NEVADA LIMITED PARTNERSHIP, CONSISTING OF ROBERT J. SULLIVAN AND PETER M. THOMAS, GENERAL AND LIMITED PARTNERS, AND JACK A. FERGUSON AND EDWARD FRIEDBERG, LIMITED PARTNERS, APPELLANTS, *v.* IN THE MATTER OF THE ESTATE OF LaVERE REDFIELD, DECEASED, ALBERT B. SOLARI, JOHN F. NASH, ALBERT E. CARTLIDGE, FRED J. BONNENFANT, SR., ROBERT RHISLETTA, EDMUND W. NASH, WILLIAM WALKER, LISA A. WILLIAMS AND NORMAN B. NASH, D & S REALTY, CARSON REALTY, RESPONDENTS.

No. 15157

January 3, 1985      692 P.2d 1294

*Vargas & Bartlett,* and *Frederic R. Starich,* and *Nicholas F. Frey,* Reno, for Appellants.

*Robert H. Perry,* Reno, for Respondents.

# OPINION

*Per Curiam:*

This appeal focuses on Carson Realty's entitlement to a broker's commission. The district court awarded Carson Realty a broker's fee in the amount of $320,000 on the ground that Maxit Financial Corporation, holder of a right of first refusal on the Redfield Estate property, was required to match the purchase offer of D & S Construction, Inc., which included a broker's fee to Carson Realty. For the reasons set forth hereinafter, we disagree.

Real estate known as the Callahan Ranch property was owned by the Estate of LaVere Redfield (Estate). The Estate entered into an agreement that granted a right of first refusal to the Callahan Ranch property to appellant Maxit Financial Corporation (Maxit). The agreement entitled Maxit, its successors or assigns, the right to purchase the property on the same terms and conditions acceptable to the Estate in connection with any other prospective buyer. The agreement also provided that the purchase of the property by Maxit was subject to the court's initial approval, but not subject to the bid-up procedures provided in NRS 147.270.

After D & S Construction (D & S) submitted several offers in 1978 to purchase the Callahan Ranch property, representatives of the Estate offered to sell the property to D & S for $2,880,000. Thereafter, D & S negotiated with the Estate regarding the use of a broker, a proposition that the Estate found acceptable so "long as the broker's commission was effectively picked up by [D & S]."

D & S thereafter submitted a written offer through Carson Realty, Inc., a licensed Nevada broker, to purchase the Callahan Ranch property. The price offered was $3,200,000 which consisted of the $2,880,000 demanded by the Estate plus a ten percent brokerage commission of $320,000 to Carson Realty.

The D & S offer to purchase contained two significant passages. First, the offer was expressly subject to Maxit's right of first refusal. Paragraph four reads as follows:

> It is understood and agreed that the close of escrow is subject to the following conditions:
>
> (a) Right of first refusal held by Maxit Financial Corporation;
>
> (b) Final sale of property subject to the Court confirmation and probate bid-up procedures.
>
> Escrow shall close on or before sixty (60) days of final Court confirmation and approval of sale.

D & S knew its offer was subject to Maxit's right of first refusal. Second, the offer provided for payment of Carson Realty's commission upon condition of the acceptance of the offer, court approval and the close of escrow. It also provided for a lesser commission if the property was sold to another following the bid-up procedures. Paragraph nine reads as follows:

> The Estate of LaVere Redfield agrees to pay to Carson Realty, H. E. Mattheus, Licensed Nevada Real Estate Broker, a brokerage commission of 10% of the purchase price if this offer be accepted and finally approved by the Court following probate bid-up procedures, or 50% of said commission (pursuant to NRS 148.120) should another offer be finally approved by the Court following said bid-up procedures.
>
> In either event, the brokerage commission shall be paid in full on close of escrow.

The D & S offer was accepted by the Estate on February 23, 1979. An escrow was then opened. On April 12, 1979, Maxit exercised its right of first refusal "unconditionally" and "without any contingencies or conditions," except to reserve its right to contest liability for the broker's commission. The Estate accepted Maxit's offer.

After Maxit exercised its option, the Estate representative, Gerald Smith, who had been dealing with D & S, took the position that the Estate would not pay the commission. Smith understood that Maxit's exercise of its right of first refusal automatically negated any right, under the D & S offer, that Carson Realty had to receive a commission. Maxit thereafter opened its own escrow for the purchase of the property and the D & S escrow was terminated.

Failing to receive a commission, Carson Realty filed suit against Maxit and its assigns. The district court concluded that Maxit was obligated to pay the commission specified in the D & S offer and accordingly entered judgment in favor of Carson Realty. This was error.

If a vendor of property is obligated to pay a brokerage commission and remains so after a right of first refusal option is exercised, then it is essential that the commission be included in the offer exercising the right of first refusal. *See* City National Bank of Miami Beach v. Lundgren, 307 So.2d 870 (Fla. 1975). It is clear, however, that application of this general rule is not warranted by the facts of the present case.

Pursuant to paragraphs four and nine of the D & S offer, *supra,* Carson Realty's entitlement to a commission at close of escrow

was contractually dependent upon two conditions precedent: (1) the non-exercise by Maxit of its right of first refusal; and (2) the sale of the property to D & S or another party after court approval following bid-up procedures. Neither of the conditions were ever satisfied. Moreover, Maxit's first refusal option was not subject to the bid-up procedures which were an integral part of one of the conditions which actuated Carson Realty's right to a commission.

Carson Realty's right to a broker's commission is dependent upon the terms of its contract. "[T]he terms of the agreement govern the broker's right to compensation." Caldwell v. Consolidated Realty & Management, 99 Nev. 635, 668 P.2d 284 (1983); *see, also* Fleshman v. Hendricks, 93 Nev. 103, 560 P.2d 1350 (1977); Nollner v. Thomas, 91 Nev. 203, 533 P.2d 478 (1975). The agreement, by its own terms, did not obligate the Estate, or, consequently, Maxit, to pay a broker's commission under the circumstances we have discussed. The district court's decision that Maxit's offer must contain a provision for Carson Realty's brokerage commission was incorrect. Accordingly, the district court's judgment is reversed.