## DALVIS, INC. *vs.* MARY A. COZ.

No. 90-P-1081.

Middlesex. January 14, 1992. - June 26, 1992.

Present: WARNER, C.J., BROWN, & GREENBERG, JJ.

*Broker*, Commission. *Contract*, With broker.

A real estate broker was not entitled to a commission on a sale of property, where the real estate in question was purchased by the town in which it was located pursuant to the first refusal option provisions of G. L. c. 61B, § 9, and where the provisions in the buyer and seller's purchase and sale agreement governing the brokerage arrangement did not provide for a commission in the event that the town exercised its option. [740-741]

CIVIL ACTION commenced in the Superior Court Department on July 6, 1988.

The case was considered by *Katherine Liacos Izzo*, J., on a stipulation of facts.

*Herbert F. Travers, III* (*Ellen M. O'Connor* with him) for the defendant.

*Barry J. Walker* (*Ralph T. Lepore, III*, with him) for the plaintiff.

WARNER, C.J. This is the defendant's appeal from a judgment of a Superior Court judge, sitting without jury, in an action of contract[1] by the plaintiff for a broker's commission on the sale of real estate owned by the defendant in Grafton. The case was submitted to the judge on a stipulation of agreed facts and one exhibit, the purchase and sale agreement. In her memorandum of decision, the judge concluded that the plaintiff was entitled to a commission and judgment entered accordingly. We reverse.

---

[1]The complaint also contained a count for unjust enrichment which the plaintiff waived prior to trial.

We draw the facts from the stipulation and the purchase and sale agreement. The defendant owned real estate (the property) in the town of Grafton (town) which was classified as recreational property under G. L. c. 61B.[2] Under G. L. c. 61B, § 9, the town (or city) in which recreational property is located has a first refusal option to purchase the property when the owner of the property intends to sell or convert it to residential, industrial or commercial use.[3] The owner is required to notify the town of the intended sale and the terms of a bona fide offer to purchase. Once the town is notified, the town's first refusal option is valid for 120 days. If the town decides to exercise its option, it must meet the bona fide offer received by the seller.

The defendant engaged the plaintiff, doing business as Dallamore Realtors, to market the property for purposes of sale. Before the plaintiff began its marketing efforts, the defendant (or her husband) informed the plaintiff of the property's G. L. c. 61B status and of the town's first refusal option. The plaintiff was aware throughout the time that it marketed the property that any sale of the property to a buyer procured by its efforts would be subject to the provisions of G. L. c. 61B, § 9, including the town's first refusal option.

---

[2] Recreational land is particularly defined and is eligible for favorable real estate tax treatment.

[3] G. L. c. 61B, § 9 (1986 ed.), provides in relevant part: "Land which is valued, assessed and taxed on the basis of its recreational use under an application filed and approved pursuant to this chapter shall not be sold for or converted to residential, industrial or commercial use while so valued, assessed and taxed unless the city or town in which such land is located has been notified of intent to sell for or convert to such other use . . . . For a period one hundred and twenty days subsequent to such notification, said city or town shall have, in the case of intended sale, a first refusal option to meet a bona fide offer to purchase said land . . . . Such notice of intent shall be sent by the landowner via certified mail to the mayor and city council of a city, or to the board of selectmen of a town, to its board of assessors and to its planning board and conservation commission, if any . . . . No sale or conversion of such land shall be consummated unless and until either said option period shall have expired or the landowner shall have been notified in writing by the mayor or board of selectman of the city or town in question that said option will not be exercised. . . ."

In June, 1987, the defendant entered into a written purchase and sale agreement to sell the property to The Annecy Corporation (Annecy), a buyer procured by the plaintiff, for $1,300,000. Prior to signing the agreement, Annecy was aware of the classification of the property and of the town's right to exercise its first refusal option and purchase the property. The purchase and sale agreement specifically required that the defendant notify the town of her intention to sell the property for $1,300,000 seven days after signing the agreement "so that the Town may make a decision as to whether or not to purchase the Premises." The purchase and sale agreement also addressed the plaintiff's broker's fee and named the plaintiff as a party to the agreement "insofar as any provisions of this agreement expressly apply to the Broker." The provision in the purchase and sale agreement applicable to the plaintiff's commission stated:

"13. *Broker's Fee.* A broker's fee for professional services of Sixty-Five Thousand and no/100 ($65,000) Dollars is due from the SELLER to Dallamora Realtors, if, as, and when said title passes and said deed is recorded unless such is not done because of a willful act of the SELLER and a defect in title shall not constitute such a willful act unless such defect arises after the date of this Agreement as a result of a conscious attempt by SELLER to prevent the completion of this transaction, the Broker herein [*sic*], but if the SELLER pursuant to the terms of clause 16 [buyer's default] hereof retains the deposits made hereunder by the BUYER, said Broker shall be entitled to receive from the SELLER an amount equal to Ten Thousand and no/100 ($10,000.00) Dollars or an amount equal to the Broker's fee for professional services according to this contract, whichever is the lesser."

The plaintiff did not sign the agreement but was aware of the relevant provisions.[4] There is no indication in the stipulation or the purchase and sale agreement that there was any other agreement, written or otherwise, between the defendant and the plaintiff.

In accordance with both the purchase and sale agreement and G. L. c. 61B, § 9, the defendant timely notified the town of her intention to sell the property to Annecy for $1,300,000. A special town meeting was held to consider the issue. The town expressed an interest in taking the land by eminent domain and paying an appraised price of $475,000. Once the town was again informed that the defendant had a bona fide offer of $1,300,000, however, the town meeting voted to match the offer and purchase the property for $1,300,000. When the defendant conveyed the property to the town, she did not pay the plaintiff the $65,000 broker's commission called for in the purchase and sale agreement because the conveyance was not to the buyer procured by the plaintiff.

In her "rulings of law," the judge "found" that because the plaintiff and the defendant were "both well aware" of the town's right of first refusal and the defendant's reliance on the agreement with Annecy, the defendant acted in "bad faith" when she used the agreement to obtain $1,300,000 from the town. She found that the defendant benefited from the plaintiff's efforts by using the agreement as leverage to secure the town's offer, which resulted in a gain of $65,000 (the broker's commission) over that which the defendant would have received pursuant to the agreement. The judge ruled that as the defendant did not intend to pay the plaintiff a broker's commission on a sale to the town, there was "an intentional misrepresentation to the town and a resulting

---

[4]The typed purchase and sale agreement is signed by the defendant and the buyer. Paragraph 18 of the agreement provides: "*Broker as Party.* The Broker named herein joins in this Agreement and becomes a party hereto, insofar as any provisions of this agreement expressly apply to the Broker and to any amendment or modifications of such provision, to which the Broker agrees in writing." There is no signature line for the plaintiff broker.

windfall for [the defendant]." Finally, the judge ruled that because the plaintiff did not sign the agreement, it did not have the opportunity to insert a special contract provision to protect itself. See note 4, *supra.* In addition, both parties were aware of the town's right of first refusal and had an equal opportunity to avoid "this misunderstanding." The use of the agreement to procure this offer from the town "constitutes an acknowledgement of [the plaintiff's] entitlement to [its] original $65,000 commission for the sale of the property."

"When a broker is engaged by an owner of property to find a purchaser for it, the broker earns his commission when (a) he produces a purchaser ready, willing and able to buy on the terms fixed by the owner, (b) the purchaser enters into a binding contract with the owner to do so, and (c) the purchaser completes the transaction by closing the title in accordance with the provisions of the contract." *Tristram's Landing, Inc.* v. *Wait*, 367 Mass. 622, 629 (1975), quoting from *Ellsworth Dobbs, Inc.* v. *Johnson*, 50 N.J. 528, 551 (1967). Here, the last requirement was not met; Annecy did not complete the transaction by closing the title.

There are exceptions to the requirements of *Tristram's Landing.* Among them is that a broker's claim will be valid where the first two prerequisites have been met but "the failure of completion of the contract results from the wrongful act or interference of the seller." *Id.* at 629. See *Lewis* v. *Emerson*, 391 Mass. 517, 524 (1984); *Capezzuto* v. *John Hancock Mut. Life Ins. Co.*, 394 Mass. 399, 402 (1985); *Lobosco* v. *Donovan*, 30 Mass. App. Ct. 53, 56 (1991).[5]

The judge's essential conclusions, which we treat as inferences from the stipulated facts and thus not binding on us, see *National Med. Care, Inc.* v. *Zigelbaum*, 18 Mass. App. Ct. 570, 574 (1984), are unwarranted. It is abundantly clear

---

[5]The plaintiff's reliance on *Bennett* v. *McCabe*, 808 F.2d 178 (1st Cir. 1987), is misplaced. That case involved a seller's default. *Bennett* may not accurately reflect Massachusetts law. See Comment, Real Estate Law - Broker's Commission - Interpretation of State Law by Federal Court - Failure to Certify State Law Question, 72 Mass. L. Rev. 143 (1987).

that at all relevant times the plaintiff knew of the defendant's statutory obligation to offer the property to the town after the receipt of a bona fide offer from any purchaser the plaintiff might procure. If the town exercised its right of purchase, the sale to a buyer produced by the plaintiff would fail. The purchase and sale agreement made this condition explicit. Paragraph 13 of the agreement set out the only provision governing the brokerage arrangement between the plaintiff and the defendant and it unequivocally called for a commission only in the event of a sale to Annecy or a forfeiture of its deposits.

In these circumstances, it cannot be said that there was any bad faith or wrongful act or interference with the contract by the defendant. Moreover, the stipulated facts wholly fail to support an inference that the defendant in any way misrepresented to the town the amount of the bona fide offer from Annecy. There was nothing in the evidence to show any "misunderstanding" with respect to the broker's commission or any "acknowledgment" by the defendant of the plaintiff's right to a commission on the purchase by the town. Finally, "we recognize . . . that the defendant received, in effect, the value of the plaintiff's services without compensating [it], but it does not appear that this was the defendant's intent . . . and, more significantly, this fact does not take the case out of the *Capezutto* [v. *John Hancock Mut. Life Ins. Co., supra* at 404] rationale: that the broker is the party in the better position to protect himself by special contract provisions designed for that purpose." *DePasquale* v. *App*, 27 Mass. App. Ct. 1185, 1186 (1989). See *Creed* v. *Apog*, 6 Mass. App. Ct. 365, 371-372 (1978), modified in another respect, 377 Mass. 522 (1979); *Stein* v. *Chalet Susse Intl., Inc.*, 22 Mass. App. Ct. 174, 178 (1986).

The judgment is reversed, and a new judgment shall be entered for the defendant.

*So ordered.*