619 A.2d 376

## COLDWELL BANKER PHYLLIS RUBIN REAL ESTATE, Appellant,

v.

## Frank D. ROMANO and Helen M. Romano, his wife.

Superior Court of Pennsylvania.

Argued Oct. 14, 1992.

Filed Jan. 26, 1993.

Wieslaw T. Niemoczynski, Stroudsburg, for appellant.

Dennis A. Deesch, Easton, for appellees.

Before CAVANAUGH, BECK and BROSKY, JJ.

BECK, Judge.

The issue is whether a real estate broker is entitled to a commission when it produces a buyer for seller's property, but the property actually is sold to a third party which held a right of first refusal. We hold that the trial court properly found that the broker was not entitled to a commission on the sale.

On May 30, 1986, appellant Coldwell Banker Phyllis Rubin Real Estate ("Coldwell Banker") entered into an "Exclusive Right to Sell Agreement" with appellees Frank D. Romano and Helen Romano ("Romanos") for the sale of a commercial property ("the property") owned by the Romanos. In this first agreement, the Romanos promised to pay to Coldwell Banker a 10% commission if the property "is sold or exchanged during the term of said agency, WHETHER EFFECTED BY WHOMSOEVER INCLUDING MYSELF, THE OWNER ..." (emphasis in original). The Exclusive Right to Sell Agreement was effective from May 30, 1986 until November 30, 1986, and also included a protection period for 360 days thereafter.[1] The listing price was $1,000,000. On the first page of the agreement, under the heading "Property Information; Lease Terms, Finance Terms, Equipment Inc., Directions, Etc." the following handwritten statement appears: "Adjacent property has first right of refusal".

Testimony at trial established that Coldwell Banker was aware from the start of the parties' relationship that the adjacent property owners, Silver Line, Inc., had the "right of first refusal" or an option to purchase the Romanos' property

---

1. This provision guaranteed that if the property was sold or exchanged after the listing agreement had expired, but during the "protection period," to "anyone with whom [the broker], any other agent, or [the owner] have negotiated with during the term of said agency" the broker still would receive its commission.

prior to its sale to a third party.[2]   Coldwell Banker's agent in charge of the Romano property, Tony Sabia, testified that the handwritten statement regarding Silver Line's right of first refusal had been inserted into the part of the agreement form reserved for exceptions to the broker's exclusive right to sell. Mr. Romano testified that it was his understanding that, under the Exclusive Right to Sell Agreement, if Silver Line exercised its option to purchase the property, no commission would be due Coldwell Banker.

All of Coldwell Banker's representatives testified that when a property is sold to a party who is excepted from an Exclusive Right to Sell Agreement, no commission is due. However, other than Tony Sabia, these witnesses testified that the Romano agreement contained no exceptions.[3]

The parties renewed the terms of the Exclusive Right to Sell Agreement for an additional 6 month period, from December 30, 1986 until July 30, 1987.   The listing price was increased to $1,100,000.   Another renewal agreement was executed on August 25, 1987, for a 12 month period, at the asking price of $1,100,000.   Testimony established that these renewals were intended to extend the terms of the original Exclusive Right to Sell Agreement.

At the same time, the parties executed another document, entitled "Exclusive Agency Listing."   This agreement's terms differed significantly from those in the original Exclusive Right to Sell Agreement:

> [Coldwell Banker], as our agent, *will earn their commission only if they provide a buyer, and it is understood that we [Romanos] reserve the right to sell the property to a buyer procured by us.   In such case no commission is due [Coldwell Banker]*, provided a sale is not made directly or indirectly to or through the Broker's prospect. . . .   Any prospect offered above property by [Coldwell Banker] is

**2.**  Frank Romano testified that he granted the right of first refusal to Silver Line when he purchased the property in 1967 in exchange for Silver Line's grant of a right of way across Silver Line's property.

**3.**  Coldwell Banker's owner, Phyllis Rubin, testified that there are strict approval procedures when an exception is requested, and that these procedures were not followed for the Romano agreements.

understood to be the Broker's prospect for a period of twelve months after the expiration of the listing agreement. Prospects will be registered with the owner....

(Emphasis added).

Testimony from Phyllis Rubin confirmed the difference between the two types of listing contracts:

... The exclusive right to sell means that no matter who sells it the realtor is due a commission. The exclusive agency listing means that if any other real estate agency or Coldwell Banker sells it, Coldwell Banker receives the commission. However, if the owner sells it, Coldwell Banker does not.

Ms. Rubin opined that the exclusive agency listing in this case was "prepared at the seller's request."

The Exclusive Agency Listing, as well as the Exclusive Right to Sell Agreement, were set to expire on August 25, 1988, with protection through August 25, 1989, and listed a selling price of $1,100,000. During this latest extension period, on June 15, 1988, Coldwell Banker received a telephone call from Rick Viders, a representative of Silver Line. This was the only contact that Coldwell Banker had with Silver Line. Coldwell Banker apparently prepared a "Notice of Showing" in an attempt to register Silver Line as a "broker's prospect." The Notice states that the property:

was presented to Silver Line–R.Viders on 6/15/88. The price quoted was $1,100,000. Should the above prospect or any representative contact you in connection with your property, please refer them to the showing REALTOR and notify said REALTOR at once, as your cooperation may greatly assist in the sale of your property.

THANK YOU

REMARKS: Wanted the asking price.

The Notice indicates that it was mailed to Romano on June 18, 1988. However, the Romanos testified that they never received a copy of the Notice.

In addition, during the contract period, Coldwell Banker introduced the property to a Robert J. Donnelly, who viewed

the property on numerous occasions and expressed serious interest in purchasing it.

On August 23, 1988, the parties agreed to extend the current listing contracts until September 15, 1988, with a protection period until September 15, 1989 for "any buyers already solicited by Coldwell Banker."

On October 4, 1988, Coldwell Banker received a written offer to purchase the property from Donnelly, for $1,000,000. The Romanos rejected the offer. After further negotiations, Donnelly agreed to pay $1,250,000 for the property, and the Romanos orally accepted that price. The parties' respective attorneys proceeded to negotiate other terms and draft formal agreements of sale.

In the meantime, the Romanos contacted Silver Line to inform them of the Donnelly offer, as they were required to do under the right of first refusal. Silver Line decided to exercise its option to purchase the property at $1,250,000, and Romano informed Coldwell Banker. The property was transferred to Silver Line on March 30, 1989. Coldwell Banker first learned of the actual transfer from the newspaper; the broker never demanded payment of a commission from the Romanos until the institution of this lawsuit on October 10, 1989.

Coldwell Banker claims that it is entitled to a commission of $100,000 [4] because Silver Line purchased the property during the protection period of an exclusive right to sell agreement, which did not specifically except from its purview a sale to Silver Line. In addition, Coldwell Banker claims it indirectly was the efficient procuring cause of the sale to Silver Line, because it obtained a buyer and increased the sale price to $1,250,000 through negotiations with Donnelly, and that it therefore is entitled to a commission under the terms of the contracts. In the alternative, Coldwell Banker argues that it is entitled to an award of quantum meruit damages, for the

4. The listing contracts provide for a commission of 10% of the sale price or, in this case, $125,000. However, after the Donnelly offer of $1,250,000, Coldwell Banker agreed to accept a reduced commission of $100,000, at the Romanos' request.

value of the work it performed and the benefits it conferred upon the Romanos.

The Romanos claim that any sale to Silver Line was specifically excepted from the Exclusive Right to Sell Agreement and its renewals by the mention of the right of first refusal on page one of the original contract. In addition, the Romanos argue that, after the August 1987 renewal, the listing contract was no longer an "exclusive right to sell" but rather an "exclusive agency listing," and that this latest contract specifically provides that if the Romanos effect the sale, no commission would be due Coldwell Banker. Finally, the Romanos assert that any potential sale to Donnelly, Coldwell Banker's prospect, was contingent upon Silver Line's refusal of the option to purchase, and that when such contingency was not met, any chance for a commission was lost.

The trial judge, sitting without a jury, found in favor of the Romanos. Coldwell Banker filed a motion for post trial relief, requesting judgment n.o.v. or a new trial. The motion was denied and this timely appeal followed.

We may not reverse an order denying a motion for a new trial unless the trial court clearly and palpably abused its discretion or committed an error of law that controlled the outcome of the case. *See Thompson v. City of Philadelphia*, 507 Pa. 592, 493 A.2d 669 (1985); *Gray v. H.C. Duke & Sons, Inc.*, 387 Pa.Super. 95, 563 A.2d 1201 (1989). Judgment n.o.v. is proper only in a clear case where, viewing the evidence in the light most favorable to the verdict winner, and granting the verdict winner every reasonable inference, there is insufficient evidence to sustain the verdict. *See Stewart v. Chernicky*, 439 Pa. 43, 266 A.2d 259 (1970); *Ingrassia Construction Co. v. Walsh*, 337 Pa.Super. 58, 486 A.2d 478 (1984). Because we find that the trial court did not err in denying Coldwell Banker's motion for post trial relief, we affirm.

A broker's right to a commission is a matter of contract, whether express or implied. *Solis–Cohen v. Phoenix Mutual Life Ins. Co.*, 413 Pa. 633, 198 A.2d 554 (1964). From May 30, 1986 until August 1987, Coldwell Banker had the

exclusive right to sell the Romanos' property. The language of the contract states that Coldwell Banker would be entitled to a commission if the property was sold or exchanged during the term of the contract, regardless of who actually effected the sale or exchange.

However, the trial judge found that a sale to Silver Line, which held a right of first refusal, was excepted from the exclusive right to sell, citing the handwritten notation on the front page of the original agreement. Whether this statement was intended to be an exception to Coldwell Banker's right to a commission was disputed at trial.

In support of its argument that it is entitled to a commission, Coldwell Banker cites *Real Estate Co. of Pittsburgh v. Cavazza*, 174 Pa.Super. 19, 98 A.2d 486 (1953). In *Cavazza*, this court held that a broker earned a commission where it introduced a buyer to a listed property, the buyer was "ready, willing and able" to purchase the property at a price acceptable to the owner, but the property actually was sold to its tenant who held a right of first refusal. However, *Cavazza* is distinguishable from this case. In *Cavazza*, there was "some conflict in testimony as to whether [the broker] had agreed that there would be no commission in the event the tenant exercised his rights, but this conflict was decided in favor of the broker." 174 Pa.Super. at 21, 98 A.2d at 487.

In this case, the same dispute was resolved *against* the broker. The trial court's finding was supported by the evidence. Coldwell Banker's own representative, Tony Sabia, testified that the statement about Silver Line's right of first refusal was inserted in the section of the Exclusive Right to Sell Agreement where any exceptions to the broker's right to receive a commission would appear.

Moreover, the Exclusive Agency Listing also was effective during the relevant time period. This later contract expressly limits Coldwell Banker's right to a commission to a sale to a "broker's prospect" which has been registered with the owner. Phyllis Rubin herself testified that an exclusive agency listing entitles the broker to a commission only when

the property is sold to a *broker's prospect,* and that a sale by the owner to a non-prospect would eliminate the commission. Finally, the parties agreed on August 23, 1988 that the current listing contracts would be extended for one more month, and expire on September 15, 1988, with a 12 month protection period for "any Buyers *already solicited by [Coldwell Banker]*."

Coldwell Banker drafted each of these listing contracts, and to the extent their terms are contradictory or ambiguous, they must be construed against Coldwell Banker and in favor of the Romanos. *See Rusiski v. Pribonic,* 511 Pa. 383, 515 A.2d 507 (1986); *Raiken v. Mellon,* 399 Pa.Super. 192, 582 A.2d 11 (1990). Under the terms of the last agreement, the Exclusive Agency Listing, Coldwell Banker is entitled to a commission from the Romanos only if a sale of the property is "made directly or indirectly to or through the Broker's prospect." Coldwell Banker's own document states that a Broker's prospect is one who is "offered" the property by Coldwell Banker, and who is "registered with the owner." The issue now becomes whether Silver Line, the ultimate purchaser of the property, was Coldwell Banker's "prospect." We find no error in the trial court's holding that it was not.

Coldwell Banker bases its argument that Silver Line was its prospect on the fact that it allegedly received a telephone call from a Silver Line representative, who inquired about the property's asking price. This was the extent of Coldwell Banker's contact with Silver Line. Coldwell Banker prepared a "show slip" addressed to Frank Romano, which indicated that the property "was presented to Silver Line" on June 15, 1988, and that the price quoted was $1,100,000. This written notice was allegedly mailed to Frank Romano on June 18, 1988, in order to "register" Silver Line as a broker's prospect. Romano denied receiving a copy of the show slip. However, even if Coldwell Banker did mail the notice to Romano, Silver Line would not so easily become its "prospect" for purposes of earning a commission.

In order for a broker to earn a commission on a sale under a non-exclusive listing,[5] the broker must be the "efficient procuring cause" of the sale. *See Strout v. Haverstock,* 382 Pa.Super. 340, 555 A.2d 210 (1989). In *Strout,* a broker entered into a non-exclusive listing agreement with a property owner, under which the owner retained the right to sell the property herself. The broker introduced the property to the pastor of a church congregation who was searching for a church property. The pastor then communicated information about the property which he received as a result of his contact with the broker to a third party, a consulting firm specializing in financing and purchasing church buildings for young congregations. The pastor and the owner arranged to show the property to the consulting firm, without the participation of the broker, and the firm eventually purchased the property for the pastor's congregation. This court held that the broker was entitled to a commission because the broker's initial contact with the pastor was the efficient procuring cause of the sale, *albeit* indirectly.

In this case, Coldwell Banker did not introduce Silver Line to the property, either directly or indirectly. To the contrary, Silver Line had a long-standing option to purchase the property, which arose through no effort of the broker, and Silver Line presumably already had important information about the property. The fact that Silver Line made a telephone call to the listing agent to discover the asking price does not make it a broker's prospect for purposes of a commission. Moreover, Coldwell Banker's tacit understanding that it was not entitled to a commission after the Silver Line sale is apparent because, although Romano informed Coldwell Banker of the sale, Coldwell Banker did not follow the transaction to settlement, and never demanded a commission from the Romanos until it filed this lawsuit. The trial court did not err in finding that

5. Although both contracts are labelled "exclusive", it is clear that the second type of agreement, the "exclusive agency listing", is exclusive only to the extent the sale is broker-assisted. In other words, no matter which *broker* effects the sale, Coldwell Banker gets the commission. But, because the agreement allows a sale by the owner without commission, the "exclusive agency listing" is not truly "exclusive."

Coldwell Banker's endeavors to sell the property were not an efficient procuring cause of the transfer to Silver Line. *See Warfel Estate,* 417 Pa. 458, 209 A.2d 293 (1965) (broker not entitled to commission under non-exclusive listing agreement, where she was not efficient procuring cause of sale to third party who was not broker's prospect); *Stevenson v. Nichols,* 362 Pa. 25, 66 A.2d 235 (1949) (broker entitled to commission where he was efficient procuring cause of sale by introducing buyer to property).

Coldwell Banker asserts that its efforts actually were the efficient procuring cause of the ultimate sale to Silver Line because Silver Line never would have decided to purchase the property unless the Romanos listed it with some broker, in this case Coldwell Banker, and unless that broker actually obtained a suitable offer from a buyer, in this case, Donnelly. This may be true. However, none of the cases which discuss the concept of "efficient procuring cause" indicates that such an attenuated role in the sale entitles a broker to a commission. Rather, a broker should be aware of the potential consequences in the event another party has the right of first refusal on a listed property, and should make clear its intent to have a truly exclusive right to sell, without exception. By allowing an exception to the Exclusive Right to Sell Agreement, and by later entering into an Exclusive Agency Listing, Coldwell Banker failed to protect any alleged right to a commission.[6]

Finally, Coldwell Banker argues that it is entitled to a commission on a quantum meruit theory since it produced a "ready, willing and able" purchaser, Donnelly, and because this offer in turn caused Silver Line to exercise its option to purchase the property. This argument fails for two reasons. First, the parties' relationship was based on a series of written contracts, and where such an express contract exists on the

---

**6.** As discussed above, the Exclusive Right to Sell Agreement and the Exclusive Agency Listing were effective concurrently during the August 23, 1987–September 15, 1988 term. The fact that Coldwell Banker entered into the Exclusive Agency Listing is further evidence that it knew it would not be entitled to a commission under the circumstances of this case.

very issue of commission, no quantum meruit/unjust enrichment recovery is permitted. *See Third Nat'l Bank & Trust Co. v. Lehigh Valley Coal Co.,* 353 Pa. 185, 44 A.2d 571 (1945); *Birchwood Lakes Community Ass'n, Inc. v. Comis,* 296 Pa.Super. 77, 442 A.2d 304 (1982). "One who claims on an express contract to pay a fixed compensation but who fails to prove his contract, cannot recover on quantum meruit by proving simply the value of the services rendered without showing an actual promise to pay." *Schlechter v. Foltz,* 179 Pa.Super. 119, 115 A.2d 910 (1955).

■ Moreover, it was not enough under the contracts that Coldwell Banker produce a buyer such as Donnelly for the property; under the express terms of the contract, the property had to be "sold or exchanged" to that particular buyer in order for the commission to accrue. Where the payment of a broker's commission is conditioned upon the occurrence of a certain event, and the condition is not met, no commission is earned. *Sork v. Rand,* 422 Pa. 512, 222 A.2d 890 (1966) (no commission is earned where agency contract included conditions for sale which were not satisfied); *Axilbund v. McAllister,* 407 Pa. 46, 180 A.2d 244 (1962) (broker did not earn commission where agency contract provided it would accrue only if sale price of $300,000 were obtained, and property sold for just $295,000).

■ In addition, the offer made by the broker's prospect, Donnelly, was necessarily contingent upon the occurrence of at least two unfulfilled conditions: the completion and approval of a final agreement of sale and Silver Line's rejection of its option to purchase the property. Because these contingencies were not met, and because the property was not "sold or transferred" to Donnelly, Coldwell Banker is not entitled to a commission. *See Shumaker v. Lear,* 235 Pa.Super. 509, 345 A.2d 249 (1975) (where mortgage financing condition was not satisfied, buyer was not "ready, willing and able," and broker has no right to commission).

Therefore, we affirm the trial court's denial of Coldwell Banker's motion for post trial relief.

Order affirmed.