902 P.2d 1084

**Arnold E. SIMMONS, Plaintiff–Appellee,**

v.

**Floyd PLUMMER and W.E. Darden, Defendants–Appellants.**

No. 15813.

Court of Appeals of New Mexico.

July 20, 1995.

Certiorari Denied Sept. 1, 1995.

Charles E. Hawthorne, Hawthorne & Hawthorne, P.A., Ruidoso, for plaintiff-appellee.

Andrew J. Cloutier, Hinkle, Cox, Eaton, Coffield & Hensley, Roswell, for defendants-appellants.

### OPINION

HARTZ, Judge.

Defendants promised to pay Plaintiff a commission if he found a buyer for their interest in a race horse. Plaintiff found a prospective buyer, who entered into a purchase agreement with Defendants. The sale was subject to the condition that a third party not exercise his right of first refusal to acquire Defendants' interest. When the third party exercised his right, Defendants refused to pay Plaintiff a commission. Plaintiff sued and prevailed. Defendants appeal. We affirm.

### I. BACKGROUND

The following version of events is based on unchallenged findings by the district court and uncontroverted evidence at trial. Defendants each owned a 25% interest in Ronas Ryon, an eight-year-old quarter horse who

was standing at stud after winning two of the three legs of the quarter horse triple crown (the Kansas Futurity and the All–American Futurity) as a two-year old. The other 50% interest was owned by Ben Benham. Defendants' combined interest in Ronas Ryon included the power of management and control. Benham had a right of first refusal to match the sales price if either Defendant agreed to sell his interest in the horse.

Plaintiff had been the trainer of Ronas Ryon since 1986. In April 1992 Defendant Darden told Plaintiff that he wished to sell his ownership share in the horse and that he would pay a 5% commission if Plaintiff found a buyer. Plaintiff had previously brokered the sale of two horses owned by Defendants. Plaintiff approached Venture Farms, Inc., but it wanted at least a one-half interest in the horse and the power of management and control. Consequently, Plaintiff contacted Defendant Plummer, who consulted with Darden and then agreed to sell his 25% interest in Ronas Ryon and pay a 5% commission if Plaintiff found a buyer. Plaintiff was aware of Benham's right of first refusal.

Plaintiff negotiated with Venture Farms an offer that was presented to Defendants. After changing a few provisions in the offer relating to breeding rights, Defendants entered into a purchase agreement with Venture Farms to sell their interest in Ronas Ryon for $500,000. Paragraph 2 of the agreement, executed on May 2, 1992, stated:

The purchase price set forth above shall be payable as follows:

(A) $50,000 shall be paid within 10 days from Sellers obtaining the consent of Ben Benham as to this agreement and Ben Benham electing not to exercise his option to purchase the Sellers['] 50% interest in "Ronas Ryon". Said consent shall be within 15 days from the date of this agreement.

(B) After such consent has been recieved [sic] by Sellers from Ben Benham, the Buyer shall have a ten day period in which to examine all records and the breeding ability of the quarter horse "Ronas Ryon", after such examination if the breeding records and the breeding ability is acceptable to Buyer the above mentioned $50,000 shall be paid to Sellers as a

deposit on "Ronas Ryon". Said deposit shall be non-refundale [sic] to Buyer except in the case of death or an injury which affects the breeding ability of "Ronas Ryon". Said $50,000 shall apply to the purchase price.

(C) The balance of the purchase price in the amount of $450,000 shall be paid in cash to Sellers at the end of the 1992 breeding season when Buyer takes delivery of "Ronas Ryon". In no event shall the delivery date be later than June 30, 1992.

At the end of the document appeared the following:

### CONSENT OF BEN BENHAM

As a 50% owner of the quarter horse "Ronas Ryon" I hereby elect not to exercise my option to purchase the interest of the "SELLERS" above and also agree that the 50% interest being purchased by the "BUYER" named above shall have full control and management of the quarter horse "Ronas Ryon".

Executed on _____ 1992 at _____,
_____

_____
Ben Benham

The agreement made no mention of a commission for Plaintiff.

The sale to Venture Farms was not consummated, however, because Benham exercised his right of first refusal and purchased Defendants' interest in Ronas Ryon at the same price and on the same terms provided in the agreement between Defendants and Venture Farm. Defendants then refused to pay any commission to Plaintiff.

## II. DISCUSSION

Defendants contend that Plaintiff was not entitled to his commission because: (1) the offer by Venture Farms was conditional, so Venture Farms was not a "ready, willing, and able" buyer; (2) Plaintiff was not the procuring cause of the sale of Ronas Ryon; and (3) as a matter of law, no commission is owed upon the exercise of a right of first refusal unless the brokerage contract specifically

provides for a commission in that instance. We are not persuaded.

### A. Conditional Offer

■ Defendants recognize that under New Mexico law, "[A] broker has earned his agreed commission when he produces a prospect who is ready, willing and able to purchase on terms agreeable to the seller." *Stewart v. Brock,* 60 N.M. 216, 225, 290 P.2d 682, 687 (1955). They rely, however, on the proposition that when a broker "produce[s] a purchaser who [is] only conditionally ready, willing and able to buy, and the condition never [is] removed[,] there [is] no purchaser ready, willing and able to buy entitling the agent to his commission." *Sanders v. Freeland,* 64 N.M. 149, 153, 325 P.2d 923, 925 (1958). Defendants' contention that Venture Farms' offer was conditional is based on the language of the purchase agreement providing that Benham must waive his right of first refusal and consent to the agreement.[1] Because neither condition was fulfilled, they argue, no commission was due Plaintiff.

■ We disagree. Although those conditions needed to be fulfilled for the sale to Venture Farms to be consummated, they were not conditions that Venture Farms imposed on the sale. This was not a case, for example, in which the buyer would agree to buy only if the buyer could obtain the money to make the purchase, *see id.,* or only if the seller could obtain rezoning of the property. Here, Defendants have not pointed to any limitation on Venture Farms' willingness to pay $500,000 to acquire Defendants' interest in Ronas Ryon. An offer to purchase is not conditional within the meaning of *Sanders* if the offer is, in essence, "I will buy if you will sell." Venture Farms was unconditionally "ready, willing and able to purchase on terms agreeable to [Defendants]." *Stewart,* 60 N.M. at 225, 290 P.2d at 687. Hence, we reject (1) Defendants' challenge to the district court's finding that "[a]t all times relevant to this case Venture Farms, Inc. was a ready, willing and able buyer for the purchase and sale of Ronas Ryon" and (2) their

challenge to the conclusion of law that "[Plaintiff] ... procured Venture Farms, Inc. as a ready, willing and able buyer for [Defendants'] 50% ownership interest in the [sic] Ronas Ryon for the sum of $500,000.00."

### B. Procuring Cause

Defendants contend that Plaintiff was not the procuring cause of the sale of Ronas Ryon because he did not procure Benham as the buyer. Plaintiff responds that in substance he did procure the sale to Benham. We need not resolve this dispute. Plaintiff is entitled to his commission even if he did not procure the actual buyer if he in fact procured someone ready, willing, and able to purchase on the sellers' terms. As stated in *Wilson v. Sewell,* 50 N.M. 121, 125–26, 171 P.2d 647, 649 (1946):

> "This case presents no circumstances which would vary the general and quite universal rule that the broker has earned, and is entitled to, his commission, under the character of agreement here relied upon, when he has procured a purchaser who *either* consummates the purchase, *or* who is ready, able and willing to do so upon the terms given to the agent by the owner." (quoting *Williams v. Engler,* 46 N.M. 454, 457, 131 P.2d 267, 269 (1942) (emphasis added).

Having affirmed the district court's ruling that Plaintiff procured a ready, willing, and able buyer for Ronas Ryon, we need not investigate whether Plaintiff procured the actual buyer, Benham.

### C. Right of First Refusal

Defendants next suggest that the commission is not due in this case because of a legal doctrine that specifically addresses rights of first refusal. According to Defendants, a commission is not owed when property is sold to a person holding the right of first refusal unless the brokerage contract specifically provides for payment in that circumstance. They contend that any ambiguity regarding whether a commission is due should be construed against the broker.

---

1. Defendants do not rely on the conditions in the purchase agreement that Ronas Ryon have acceptable breeding records and breeding ability.

Presumably there is no dispute that those conditions would have been satisfied.

■ We reject Defendants' position. We see no reason to carve out their proposed exception from the general rule that the broker earns the commission by procuring a buyer ready, willing, and able to purchase the property on the seller's terms. Even when the sale to such a buyer is prevented by a third party's exercise of a right of first refusal, the combination of two factors argues strongly for awarding the commission. First, the broker has done all that can be done to earn the commission. Second, the seller is guaranteed to achieve the result for which the broker was hired—a sale (to either the broker's prospect or the person holding the right of first refusal) at the asking price. Thus, when the owner of property promises to pay a broker a commission for finding a buyer, the promise should be interpreted to encompass paying the commission even if a right of first refusal is exercised. Such an interpretation is the appropriate default rule—that is, the rule to be applied when the contract does not expressly address the matter—because it compensates the broker for accomplishing the assigned task yet does not impose an unfair burden on the owner, who was willing to net the same amount of money, on the same terms, if the right of first refusal had not been exercised. Because payment of the commission is reasonable and equitable when the right of first refusal is exercised, one could say that the right to the commission in that event is implicit in a contract to pay a commission for procuring a buyer.

We are not persuaded by Defendants' argument that the broker should bear the risk of ambiguity in the brokerage contract. They advance the contention that the broker is the party to the contract better able to protect its self-interest by including in the contract specific terms regarding what happens if the right of first refusal is exercised. They find support in statements by the Massachusetts courts. See *Dalvis, Inc. v. Coz,* 32 Mass.App. 736, 594 N.E.2d 890, 893 (1992); *DePasquale v. App,* 27 Mass.App. 1185, 542 N.E.2d 309, 311 (1989). Yet, whatever the merit of this contention in the settings considered by the Massachusetts courts, the contention lacks merits in this case. The Massachusetts cases involved professional real estate brokers. When one party to a contract has substantially greater sophistication than the other in the type of transaction governed by the contract, a court might properly require the sophisticated party to protect itself in the contract against likely contingencies. Thus, if the broker is a licensed professional, there is some force to Defendants' contention that the broker is the party better able to protect its self-interest. But we need not decide what the default rule should be when the broker is a licensed professional. Plaintiff was not in that category and nothing in the record suggests that Plaintiff possessed substantially more sophistication than Defendants in these matters.

Finally, we address the six decisions cited by Defendants in which brokers were denied their commissions after the exercise of a right of first refusal. Although these decisions may contain some language supporting Defendants' argument, they are distinguishable on their facts. In *DePasquale* the commission was denied because the prospective buyer procured by the broker had never signed a binding purchase agreement with the seller. The other opinions relied on specific contract language not present in our case. In *Fallenius v. Walker,* 787 P.2d 203 (Colo.Ct.App.1989), *cert. denied* (May 29, 1990), the open listing agreement stated, "In case of a sale made by any person other than the undersigned broker, this listing contract is void and of no effect," *id.* at 204, and the contract between the seller and the prospective buyer procured by the broker stated, "Upon *closing of this contract,* seller agrees to pay to broker a commission of 10% of the purchase price for services *in this transaction." Id.* In *Lehr v. Baron's of Surfside, Inc.,* 550 So.2d 74 (Fla.Dist.Ct.App.1989), the brokerage agreement "specifically provided, contrary to the ordinary rule ..., that no commission was due until and unless a sale to the broker's principal actually took place." *Id.* at 75. In *Dalvis* the brokerage arrangement "unequivocally called for a commission only in the event of a sale to [the buyer procured by the broker] or a forfeiture of its deposits." 594 N.E.2d at 893.

Contract language also distinguishes *Redfield v. Estate of Redfield*, 101 Nev. 24, 692 P.2d 1294 (1985), although the facts are more complex. The prospective buyer "negotiated with the Estate regarding the use of a broker, a proposition that the Estate found acceptable so 'long as the broker's commission was effectively picked up by [the prospective buyer].'" *Id.* 692 P.2d at 1295. The prospective buyer submitted through the broker a purchase offer for the price demanded by the Estate plus a commission for the broker. *Id.* The offer contained the following provision: "The Estate ... agrees to pay [the broker] a brokerage commission of 10% of the purchase price if this offer be accepted and finally approved by the Court following probate bid-up procedures, or 50% of said commission ... should another offer be finally approved by the Court following said bid-up procedures." *Id.* 692 P.2d at 1295–96. The offer was expressly subject to the right of first refusal of a third party. *Id.* 692 P.2d at 1295. That party exercised its right, which was not subject to probate bid-up procedures. *Id.* 692 P.2d at 1296. The court wrote that "'the terms of the agreement govern the broker's right to compensation.'", *id.* (quoting *Caldwell v. Consolidated Realty & Management Co.*, 99 Nev. 635, 638, 668 P.2d 284, 286 (1983)), and noted that the agreement "by its own terms, did not obligate the Estate, or, consequently, [the party that exercised the right of first refusal,] to pay a broker's commission under the circumstances we have discussed." *Id.* The case before us does not include similar contract language, nor does it involve a broker retained by the buyer rather than the seller.

Of particular interest is the sixth decision cited by Defendant. In *Coldwell Banker Phyllis Rubin Real Estate v. Romano*, 422 Pa.Super. 319, 619 A.2d 376, 382, *appeal denied*, 534 Pa. 635, 626 A.2d 1154 (1993), the brokerage agreement provided for a commission regardless of who effected the sale, even the owner. A handwritten insertion, however, stated "Adjacent property has first right of refusal." *Id.* 619 A.2d at 377. The owner and the broker's agent in charge of the property testified that the insertion meant that no commission was due if the right of first refusal was exercised. Other representatives of

the broker disagreed, but the trial court construed the contract in favor of the owner. *Id.* 619 A.2d at 377–78. The appellate court affirmed the ruling denying a commission on a sale to the holder of the right of first refusal. But the court did not rest its decision on a general rule against awarding a commission when a right of first refusal is exercised. On the contrary, the court reaffirmed the decision in *Real Estate Co. v. Cavazza*, 174 Pa.Super. 19, 98 A.2d 486 (1953), which

> held that a broker earned a commission where it introduced a buyer to a listed property, the buyer was "ready, willing and able" to purchase the property at a price acceptable to the owner, but the property actually was sold to its tenant who held a right of first refusal.

*Id.* 619 A.2d at 380. The court distinguished *Cavazza* on the ground that the trial court in that case had resolved in favor of the broker a factual dispute regarding whether the broker had agreed that there would be no commission in the event the tenant exercised his right. *Id.*

Rather than following the results in the decisions cited by Defendants, in which the facts are distinguishable from those present here, we follow those decisions awarding a brokerage commission for procuring a ready, willing, and able buyer despite the sale to the holder of a right of first refusal. *See Cavazza; Beaudry v. Plew*, 170 A.D.2d 874, 566 N.Y.S.2d 701 (1991); *cf. Magnolia Fed. Sav. & Loan Ass'n v. Randal Craft Realty Co.*, 342 So.2d 1308 (Miss.1977) (relying on equitable remedies). The record in the present case supports the district court's judgment.

## CONCLUSION

For the above reasons, we affirm the judgment below.

**IT IS SO ORDERED.**

ALARID and BLACK, JJ., concur.