Locke, J.

INTRODUCTION

This matter is before the court on motions for partial summary judgment on an action brought by plaintiffs Richard and Christina Williams (the “Williamses”) against defendants Richard, Wilbert and Clifford Watts (the “Wattses”), the Town of Harvard (the “Town”), the Trustees of the Harvard Conservation Trust (the “Trust”) and Turner-Pieters & Hazel, Inc. (“Turner-Pieters”). For the purposes of this motion, the Williamses allege breach of contract (Count I) and specific performance (Count II) against the Wattses; tortious interference with a contract (Count III) against the Town and the Trust; misrepresentation (Count IV) against the Wattses and the Town; negligent infliction of emotional distress (Count VI) against the Town and the Trust and violation of G.L.c. 39, §23B[3] (Count VII) against the Town.

BACKGROUND

The Wattses jointly owned several acres of land in the Town near Still River Road. Some of that land was valued, assessed and taxed by the Town on the basis of its agricultural use, pursuant to G.L.c. 61A. In exchange for certain property tax benefits granted by G.L.c. 61 A, the Town held a right of first refusal on the land.
In 1998, the Wattses offered a 4.6-acre lot (“lot 3”) for sale through a local real estate agency, Turner-Pieters and Hazel (“Turner-Pieters”). The Williamses offered to purchase the property, and the Wattses accepted their offer, subject to the Town’s right of first refusal. On or about September 21, 1998 the parties executed a Purchase and Sale Agreement (“P&S”) in which the Williamses agreed to purchase lot #3 from the Wattses for $280,000. The P&S contained a clause providing:
[t]he parties’ obligations hereunder shall be contingent upon the decimation by the Town of Harvard in appropriate form of its rights of first refusal to purchase said premises under General Laws, Chapter 61 A, Section 14. Upon execution of this agreement Sellers shall forthwith seek such declination by notifying the Town of this transaction as required under said statute.
The Wattses gave the Town written notice of the proposed sale on September 28, 1998. On October 1, 1998, the Harvard Conservation Commission (the “Conservation Commission”) voted to decline the Town’s right of first refusal on lot 3. On January 9, 1999, the Wattses sent a letter to the Harvard Board of Selectmen (the “Board”), indicating their willingness to convey or option other property, in addition to lot 3, to the Town or a “quasi-public entity.” In that letter, the Watts’ counsel stated that “(the Wattses] do not wish their response to your inquiries to be viewed as an inducement to the Town of Harvard to take action under the first refusal provisions of the statute. They feel that they entered into their agreements with the Williams[es]... in good faith, and they would not wish to be instrumental in defeating their expectations.”[4]
On January 19, 1999, at a public hearing, the Board unanimously voted to assign the right of first refusal on lot 3 to the Trust, a non-profit conservation organization created to “assist in and promote the preservation of the rural character of the Town.” At the time of the vote, the Chairwoman of the Board was Sarah Hamill (“Chair Hamill”), a licensed realtor who was affiliated with Harvard Realty Co. (“Harvard Realty”).[5] On January 20, 1999, the Trust voted to accept the assignment and exercise the right of first refusal on lot 3, and the Town notified the Wattses that it had assigned the right of first refusal to the Trust. The Town recorded the assignment with the Worcester Registry of Deeds on January 27, 1999.
On January 21, 1999 and January 22, 1999, respectively, the Trust and the Wattses gave the Williamses written notice that the Trust intended to exercise the right of first refusal. On January25, 1999, the Trust exercised a sealed instrument noticing its intent to exercise the right of first refusal; it recorded that instrument on January 27, 1999. On April 7, 1999, the Wattses conveyed lot 3 to the Trust along with options to purchase additional properties, includ *513 ing lot 4. In response to the conveyance of lot 3, the Williamses brought this action.
The Williamses and the Wattses have filed cross motions for summary judgment on the counts of breach of contract and specific performance. The Town and the Trust seek summary judgment on the count of tortious interference with a contract. The Wattses and the Town seek summary judgment on the misrepresentation count. The Wattses, the Town and the Trust seek summary judgment on the count of intentional infliction of emotional distress. The Town seeks summary judgment on the count of violation of G.L.c. 39, §23B. The court addresses each of the counts in turn.

DISCUSSION

A court grants summary judgment where there is no genuine issue of material fact and the summary judgment record entitles the moving party to judgment as a matter of law. See Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). The moving party has the burden of affirmatively demonstrating that a genuine issue of material fact does not exist on every element of the claim. See Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing a genuine issue of material fact in order to defeat the motion. Id. at 17. The court resolves any conflicts in the summary judgment record and makes all favorable inferences in favor of the non-moving party.
1. Breach of Contract (Count I), Specific Performance (Count II).
Both the plaintiff Williamses and the defendant Wattses seek summary judgment on Counts I and II. The Wattses argue that they are entitled to judgment as a matter of law because the Williams’ rights under the P&S never vested. The Wattses contend that the P&S never became operational because it was subject to a condition precedent (the Town’s declination of its right of first refusal) that did not occur. The Williams respond that, for several reasons, a decimation by the Town was not required and that the P&S was therefore valid and binding without the declination. The Williamses contend, therefore, that, as a matter of law, they are entitled to specific performance of the P&S.
a. The P&S Was Subject to a Condition Precedent
Generally, interpretation of contract language is a question of law for the court. See Powers v. Wayside Inn of Falmouth, 343 Mass. 686 (1962). The court must “give effect to the parties’ intention and construe the language to give it reasonable meaning wherever possible.” Shea v. Bay State Gas Co., 383 Mass. 218, 224-25 (1981).
A condition precedent “defines an event which must occur before a contract becomes effective or before an obligation to perform arises under the contract.” Mass. Mun. Wholesale Electric Co. v. Town of Danvers, 411 Mass. 39, 45 (1991). In this case, the P&S provided that the parties’ obligation was contingent upon the Town’s declination of its right of first refusal. Because the plain language of the agreement indicates the parties’ intent that the Town decline its right of first refusal before any obligation of performance arose, the P&S was subject to a condition precedent.
b. Validity of the Option, the Assignment and the Exercise of the Option
The Williamses contend, however, that a declination by the Town was not required as a condition precedent to conveyance of lot 3 because (1) the Town did not have a valid option on lot 3, (2) the Board’s vote assigning the option to the Trust was invalid and should be rescinded, (3) the Trust did not exercise the option within the option period.
(1) The Town’s Right of First Refusal
The Williamses first contend that the declination was not required because the Town’s right of first refusal was extinguished by the Town’s failure to annually record its interest in lot 3 with the Registry of Deeds. A town with a right of first refusal on property pursuant to G.L.c. 61A must make an annual determination of the eligibility, valuation, taxation and assessment of the property, then record its tax lien on the property for that year with the Registry of Deeds. G.L.c. 61A, §6. The statute does not, however, extinguish the right of first refusal should the Town fail to record its interest. Rather, the statute provides that the Town’s interest “shall not be effective against a bona fide purchaser or other transferee without actual knowledge." G.L.c. 61A, §9. Here, because there is no dispute that the Williamses had knowledge of the Town’s right of first refusal, the Town’s right of first refusal is valid.
(2) The Board’s Vote to Assign the Option to the Trust
The Williamses also argue that the Board’s vote to assign the option to the trust was invalid because Chair Hamill had a conflict of interest and failed to abstain from the vote. “A municipal employee who participates as such an employee in a particular matter in which to his knowledge he, ... or a business organization in which he is serving as an officer, director, trustee, partner or employee . . . has a financial interest” is subject to criminal penalties. G.L.c. 268A, §19. Any violation of section 19 which has “substantially influenced the action taken by any municipal agency in any particular matter shall be grounds for avoiding, rescinding or cancelling the action on such terms as the interest of the municipality and innocent third persons require.” Everett Town Taxi, Inc. v. Bd. of Aldermen of Everett, 366 Mass. 534, 536 (1974).
In essence, the Williamses argue that the Town and the Trust would not have exercised the option on lot 3 unless they were also able to purchase lot 4.[6] Because an agent associated with Harvard Realty sold lot 4, the Williamses contend that, pursuant to G.L.c. 268A, §19, Harvard Realty’s interest in lot 4 must be imputed to *514 Chair Hamill as an employee of Harvard Realty, and that the assignment of lot 3 must therefore be rescinded because of Chair Hamill’s conflict of interest.
The Williamses have presented no evidence, however, to establish the existence of a genuine issue of material fact as to whether Chair Hamill was an employee of Harvard Realty. An employer/employee relationship is characterized by several factors, including the employer’s ability to control the work performed, the method of payment, the skill required, whether employer supplies the tools, instrumentalities or the place of work, and the parties’ understanding of relationship. See Chase v. Independent Practice Assn., Inc. 31 Mass.App.Ct. 661, 665 (1991). Chair Hamill states in her affidavit that she is an independent broker affiliated with Harvard Realty, that she is not an officer or director of Harvard Really, does not take instruction or direction from the principals of Harvard Realty and is compensated only by commission. See Com. v. Savage, 31 Mass.App.Ct. 714, 716 (1991) (compensation by commission alone does not indicate employer/employee relationship). Where the Williamses have presented no evidence that Chair Hamill participated in any way in the sale of lot 4, this court cannot conclude that there is a genuine issue of material fact as to whether the relationship between lots 3 and 4 precluded Chair Hamill from voting on a matter related to lot 3 and the Board’s vote to assign the option to the Trust is valid.
(3) The Trust’s Exercise oj the Right of First Refusal
“When the holder of a right of first refusal receives notice of a bona fide offer to purchase which the owner has decided to accept, the right of first refusal ripens into an option to purchase.” Stone v. W.E. Aubuchon Co., 29 Mass.App.Ct. 523, 526 (1990). A town with a right of first refusal may exercise the option for a period of 120 days subsequent to notification of abona fide offer, by written notice mailed to the landowner and recorded at the registry of deeds within the option period. G.L.c. 61 A, §14. The Williamses contend that the Trust did not exercise the right of first refusal until the 121 st day of the option period, and that this failure to exercise the option in compliance with its terms constituted a declination of the option.
In general, where a statute relates to the time of performance of a duty of a public officer, and does not go to the essence of the thing done, it is only a “regulation for the orderly and convenient conduct of public business.” Zuckerman v. Zoning Bd. of Appeals of Greenfield, 394 Mass. 663, 667 (1985). The purpose of such recording statutes is to provide all interested parties with notice. See Mister Donut v. Kemp, 368 Mass. 220, 224 (1975) (where option is not recorded as required by statute, subsequent purchasers with actual notice take subject to option); Richardson v. Lee Realty Corp., 364 Mass. 632, 634 (1974) (to destroy bona fides of subsequent purchaser, purchaser must have actual notice of unrecorded instrument).
Here, it is undisputed that the Town’s right of first refusal expired on January 26, 1999. The one-day lapse in recording the assignment and its exercise might have affected the validity of the transaction had it involved a subsequent purchaser without knowledge. It is, however, undisputed in this case that the Williamses were given actual notice prior to the expiration of the option. That notice included both the fact of an assignment and the Trust’s intention to exercise the option. Because all parties had notice of the assignment and the Trust’s intent to exercise the option to purchase lot 3, the Trust’s exercise of the option was valid pursuant to G.L.c. 61A, §14.
c. The Covenant of Good Faith and Fair Dealing
Finally, the Williamses argue that the condition precedent does not apply because the Wattses had an affirmative duty to seek a declination from the Town, and that the Wattses’ subsequent negotiations with the Town for the sale of other properties in addition to lot 3 was contrary to the intent of the P&S.[7]
The Wattses had a duty to deal in good faith with the Williamses. Warner Ins. Co. v. Comm’r. of Insurance, 406 Mass. 354, 362 n.9 (1990). The implied covenant of good faith and fair dealing provides that neither party shall do anything that will have the “effect of destroying or injuring the right of the other parly to enjoy the fruits of the contract.” Drucker v. Roland Wm. Jutras Assoc., 370 Mass. 383, 385 (1976). Here, the Williamses had counsel and were aware that the Town had a right of first refusal on lot 3. The mere fact that the Trust exercised that option and also agreed to purchase or option additional land does not alone establish bad faith. See Dalvis, Inc. v. Coz, 32 Mass.App.Ct. 736, 741 (1992).
The Williamses have, however, raised genuine issues of material fact as to whether the Watts’ negotiations with the Town for the conveyance of other parcels in addition to lot 3 constituted bad faith. There is no dispute that the Conservation Commission voted to decline the right of first refusal on October 1, 1998. The question is whether the Watts’ continued negotiations with the Town after the Conservation Commission’s declination breached the Watts’ covenant of good faith and fair dealing with the Williamses.
The Williamses also suggest that bad faith is evidenced in the Watts’ January 19, 1999 letter to the Board, indicating their willingness to convey or option additional property to the Town or a “quasi-public entity.” The letter, which states that it is a response to inquiries made by the Town, describes the additional properties the Wattses are willing to sell or option to the Town and specifically provides that the letter should not be considered either an “inducement to the Town ... to take action under the first refusal provisions of the statute” or an act of bad faith as to the Williamses. The letter concludes that the Wattses “realize that any decision taken in behalf of the Town is out of their hands at this time.”
*515 Unlike Dcdvis, therefore, this is not a case in which a town, when informed of an offer by a third party to purchase property on which it held a right of first refusal, merely decided to exercise that right. Dalvis, 32 Mass.App.Ct. at 739. Here, in contrast, the evidence suggests disputed issues of fact as to the intent of the Wattses in continuing to negotiate with the Town after the declination. In their affidavits, the Williamses state that the Wattses and their agents assured the Williamses that neither the Town nor any other conservation group had an interest in purchasing lot 3 because it was landlocked and adjacent to no other conservation or Town-owned property. They suggest, therefore, that the Watts’ agreement to sell additional properties to the Town was intended to make lot 3 more attractive to the Town, thereby breaching the Watts' duty of good faith and fair dealing to the Williamses under the P&S.
Where the Town held an option to purchase lot 3, some level of negotiation would be necessary to exercise that option. Id. Thus, the mere existence of the P&S did not preclude negotiations between the Town and the Wattses. Within that context, however, there are factual issues as to whether the Town breached its duty of good faith to the Williamses by continuing to negotiate with the Town after the initial declination. Although the option remained in effect for 120 days, the Williamses have raised factual questions as to whether the nature of the subsequent negotiations between the Wattses and the Town constituted a breach of good faith and fair dealing. At a minimum, the letter from the Wattses raises questions as to who initiated the subsequent negotiations and the intent of the Wattses in entering into those negotiations without informing the Williamses. The letter suggests that both the Town and the Wattses were aware that their continued negotiations might be viewed as evidence of bad faith by the Williamses. The Williamses have provided the requisite quantum of evidence to survive the Watts’ motion for summary judgment. See Dexter’s Hearthside Restaurant, Inc. v. Whitehall Co., 24 Mass.App.Ct. 217, 223 (1987). Where there are disputed issues of fact as to whether the Watts’ continued negotiations with the Town after the declination breached the Watts’ duty of good faith and fair dealing to the Williamses, the parties are not entitled to summary judgment on Counts I and II.
2. Tortious Interference with Contract (Count III)
The Trust and the Town seek summary judgment on the Williams’ claim for tortious interference with the P&S. The claim against the Town is barred by the Tort Claims Act, G.L.c. 258, §4, which bars a civil action against a public employer unless the claimant presents his claim in writing to the executive officer of the public employer within two years after the date when the cause of action accrued. Where, as here, a plaintiff has failed to make proper presentment, summary judgment for the town is appropriate. See Alex v. Boston Water & Sewer Commission, 45 Mass.App.Ct. 914, 915 (1998).
The Trust also seeks summary judgment on Count III. To establish a claim for tortious interference with contractual relations, the Williamses must show evidence (i) that they had a contract with the Wattses; (ii) that the Trust knowingly and intentionally induced the Wattses to breach the contract; (iii) that the Trust’s interference was intentional or improper in motive or means; and (iv) that the Williamses were injured by that interference. See Draghetti v. Chmielewski, 416 Mass. 808, 816 (1994).
A plaintiff proves improper motive by showing that the defendant had a malignant intent unrelated to a legitimate purpose. King v. Driscoll, 418 Mass. 576, 587 (1994) Here, where the only evidence is that the Trust purchased the property for conservation purposes, there is no suggestion of a genuine issue of material fact as to improper motive. The Williamses also assert that the Trust’s means were improper because the option was invalid and was not exercised within 120 days. Those claims were addressed and dismissed in the previous discussion of breach of contract and specific performance.
3. Misrepresentation (Count TV)
A claim for misrepresentation requires a showing that defendant made a false statement of material fact to induce the plaintiff to act and that the plaintiff acted in reliance on the statement to his detriment. Zimmerman, v. Kent, 31 Mass.App.Ct. 72, 77 (1991). For the purposes of this motion, the court accepts as true that the the Wattses told the Williamses that the Town would not exercise its option on lot 3 because lot 3 was landlocked. That representation is material, and, for the purposes of this motion, the court finds that the Williamses relied on that representation in deciding to execute a P&S for lot 3.
Statements of opinion do not constitute misrepresentation. The difference between fact and opinion is, however, a difficult distinction to make. See McEneaney v. Chestnut Hill Realty Corp., 38 Mass.App.Ct. 573, 575 (1995) (representation is opinion if it expresses only belief, without certainty, as to existence of fact or judgment as to quality, value, authenticity or other matters of judgment). “A statement that in form is one of opinion may constitute a statement of fact if it may reasonably be understood by the recipient as implying that there are facts to justify the opinion or at least that there are no facts incompatible with it.” Id. This is particularly true where the declarant “possesses superior knowledge concerning the matter to which the misrepresentation relates.” Nota Construction Corp. v. Keyes Assoc., Inc., 45 Mass.App.Ct. 15 (1998). These are questions of fact which must go to a jury.
The reasonableness of the Williams’ reliance is also a question of fact. Reliance on a statement is unreasonable where “the falsity is obvious to his senses, or he has reason to know of facts which then make his reliance unreasonable.'' Cote v. Astra USA, Inc. 1998 WL 1184110 (Botsford, J.) (emphasis in original). Although the P&S was expressly contingent on the Town’s declination of its *516 right of first refusal, there are factual questions as to whether the Williamses realized that the inclusion of additional property owned by the Wattses might make the purchase more desirable to the Town. Where there are factual questions as to whether the statements were opinion or fact, and whether the Williams’ reliance was reasonable, the claim for misrepresentation is not appropriate for summary judgment.
4. Negligent Infliction of Emotional Distress (Count VI)
The Williamses allege that the Wattses, the Town and the Trust negligently caused them emotional distress by attempting to exercise an invalid option to purchase lot 3. Assuming, arguendo, that the option and its exercise were invalid, plaintiffs have failed to establish a claim for negligent infliction of emotional distress.
A claim for negligent infliction of emotional distress requires a showing of (i) negligence, (ii) emotional distress, (iii) causation and (iv) that a reasonable person would have suffered emotional distress under similar circumstances. See Payton v. Abbot Labs, 386 Mass. 540, 557 (1982). Plaintiffs must allege more than “mere upset, dismay, humiliation, grief and anger.” Sullivan v. Boston Gas Co., 414 Mass. 129, 137-38 (1993). In addition, plaintiffs must corroborate claims of emotional distress with objective evidence of harm which may require medical testimony. Id.
In their answers to interrogatories and affidavits, the Williamses allege that they suffered “tremendous unhappiness, stress, anxiety, emotional trauma and severe distress.” The Williamses offer no objective nor medical evidence of harm resulting from their distress. As a matter of law, the grief, dismay and unhappiness alleged by the Williamses are insufficient to support a claim for negligent infliction of emotional distress, and the Wattses, the Town and the Trust are entitled to summary judgment on Count VI.
5. Violation of the Open Meeting Law (Count VII)
Governmental bodies must give written notice of their meetings, hold them in public and maintain complete and accurate records of those meetings. G.L.c. 39, §23B. A governmental body that fails to comply with the statute may be liable to a civil action. Standing to bring such an action, however, is limited to groups of at least three registered voters, the attorney general or the district attorney. G.L.c. 39, §23B. The Williams do not have standing to bring such an action because they are fewer than three and are not registered voters in the Town. Therefore, the Town is entitled to summary judgment on Count VII.

CONCLUSION

The Town had a valid right of refusal on lot 3, the Board’s assignment of that option to the Trust was valid and the Trust properly exercised the option. However, because there are genuine issues of material fact as to whether the Wattses breached their duty of good faith and fair dealing to the Williamses under the P&S, neither the Williamses nor the Wattses are entitled to summary judgment on the claims for breach of contract (Count I) and specific performance (Count II).
The Trust and Harvard are entitled to summary judgment on the Williamses’ claim for intentional interference with contractual relations (Count III).
There are genuine issues of material fact as to whether the Watts’ representations as to the Town’s interest in purchasing lot 3 were fact or opinion, and whether the Williamses reasonably relied on those representations. Accordingly, the Wattses are not entitled to summary judgment on the Williams’ claim for misrepresentation (Count IV).
The Williamses have presented no evidence that the distress they suffered constituted more than mere upset, dismay, humiliation, grief and anger. Consequently, the Wattses, the Town and the Trust are entitled to summary judgment on the claim for negligent infliction of emotional distress (Count VI).
Because the Williamses do not have standing to bring an action under G.L.c. 39, §23B, the Open Meeting Law, the Town is entitled to summary judgment on Count VII.

ORDER

For the foregoing reasons, it is hereby ORDERED that the Williams’ and the Watts’ cross motions for summary judgment on Counts I and II are DENIED. The motions of the Trust and Harvard for summary judgment on Count III are ALLOWED. The Watts’ and the Town’s motions for summary judgment on Count IV are DENIED. The motions of the Wattses, the Town and the Trust for summary judgment on Count VI are ALLOWED. The Town’s motion for summary judgment on Count VII is ALLOWED.

 The Massachusetts Open Meeting Law.

 The letter suggested that it was sent in response to conversations between the Wattses and the Board.

 The Wattses initially listed lot 3 with Harvard Realty, but took it off the market because of environmental concerns. In 1997, the Wattses listed lot 3 with Turner-Pieters. When the Wattses subsequently arranged to sell lot 4 to the Town, Hunneman Caldwell listed lot 4 and a realtor from Harvard Realty sold it.

 In their misrepresentation claim, the Williamses assert that the Wattses assured them that the Town would not exercise its option on lot 3 because lot 3 was landlocked and adjacent to no other conservation or Town-owned property. The Wattses’ agreement to convey lot 4 to the Town apparently resolved that problem.

 The Williamses also assert that the Wattses acted in bad faith because the negotiations that resulted in assignment of lot 3 to the Trust failed to satisfy the purpose of G.L.c. 61A. The purpose of G.L.c. 61A is to conserve agricultural and horticultural land. The Trust is a non-profit conservation organization created to “assist in and promote the rural character of the Town of Harvard.” The Williamses offer no evidence that the assignment of lot 3 to the Trust failed to satisfy the purpose of G.L.c. 61A.