Fremont-Smith, Thayer, J.
Plaintiffs allege that, in 2003, they were fraudulently induced to purchase a condominium in Brookline which was prone to water infiltration causing mold inside the walls which resulted in their being forced to vacate the premises for fourteen months to permit removal of the mold. Defendant denies that she made any misrepresentations concerning water infiltration and contends that in any event, she is exonerated by the disclaimers contained in the documents, one of which[1] all parties signed. The Seller’s Statement of Unit Condition, which defendant signed,[2] denies any water infiltration problems.[3] The Statement provides: “All information in this statement is subject to verification by the Buyer,” and “Neither Seller nor broker /real tor has made any representation, warranty or guaranty as to the condition of the property or the information contained herein." The Statement further advises the Buyer to “obtain independent counsel and/or professional advisors to verify the condition of the property and investigate all matters related to the property, including, without limitation, the information contained in the statement,” and warns “Neither Seller nor broker/realtor is an expert on any of the matters described in this statement nor have they made any independent investigation of said matters.” It further provides, in capital letters, that the Buyers “UNDERSTAND AND AGREE THAT THE UNIT IS BEING SOLD AS IS,’ ‘WHERE IS,’ WITHOUT WARRANTY OR REPRESENTATION OR FITNESS FOR A PARTICULAR PURPOSE . . .”
Prior to purchasing the Unit, the Booksteins had a home inspector inspect the interior and exterior, including all fixtures and systems. He observed no water damage.
On January 16,2004, the Booksteins and Ms. Kohn entered into a Purchase and Sale Agreement regarding the Unit. It provided “the acceptance of a deed by the BUYER or his nominee as the case may be, shall be deemed to be a full performance and discharge of every agreement and obligation herein contained or expressed, except such as are, by the terms hereof, to be performed after the delivery of said deed.” It further provided “the BUYER acknowledges that the BUYER has not been influenced to enter into this transaction nor has he relied upon the warranties or representation not set forth or incorporated in this agreement or previously made in writing, except for the following additional warranties and representations, if any, made by either the SELLER of the Broker(s): NONE.” The Agreement further provides that it sets forth the entire contract between the parties. Rider “A” to the Agreement states that “The BUYER acknowledges that the BUYER has had an opportunity to inspect the premises, that the BUYER is satisfied with the result of such inspection, and that the premises are therefore being purchased and sold ‘AS IS.’ ’’
After Ms. Kohn completed the Statement of Condition, she admits in deposition that she observed a small wet spot under the window in the living robin. The parties dispute whether she informed the Book-steins of this wet spot, Ms. Kohn stating the Book-steins were informed and the Booksteins stating they were not.
The Booksteins obtained title to the Unit on March 1, 2004 and moved in on April 20, 2004. In October of 2004, seven months after moving into the Unit, the Booksteins began to notice a musty smell which was determined to be from mold inside the walls around the windows.
In this case, there is alleged evidence upon which a jury could find intentional misrepresentation. Plaintiffs contend that the Seller’s Statement, as filled out by the defendant, included representations that:
(1) she was not currently and had never experienced any problems in the Unit with dampness anywhere,
(2) she did not know if there currently or ever were any ceiling problems, floor problems, wall problems or window problems,
(3) she did not know of any exterior or interior structural problems such as floors, ceilings, walls or windows, and
(4) she was not aware of any other information concerning any part of the condominium/cooperative or Unit which might affect the decision of a *110 Buyer to buy or affect the value of the unit or its use by a Buyer.
Plaintiffs contend, however, that Ms. Kohn had, in fact, experienced water intrusion in the bedroom and in the den, was aware that there were problems of water leakage in other apartments, was aware of wet carpets in the lobby of her building, and that there had been leaks in the lobby which necessitated buckets to catch the water. They further contend that, “just prior to” the sale, Ms. Kohn experienced water leaks in the living room windows which caused her to make “irate” complaints to the management office.

DISCUSSION

The alleged facts discussed above indicate that there are disputes of material fact as to whether defendant’s disclaimers were intentionally or negligently misleading. The question, then, is whether the exculpatory and integration language in the documents bars the plaintiffs’ claims as a matter of law.
Plaintiff urge that it does, citing O’Connell’s Sons, Inc. v. Commonwealth, 349 Mass. 642, 647 (1965), and Littauer v. Thompson, 1995 WL 1146831 (Mass.Super., 1995) [4 Mass. L. Rptr. 439).
In Littauer, however, the Court stressed that defendant had not answered “no” to the question regarding his knowledge of any prior problem with the septic tank, but had checked the box “unknown,” and pointed out that a seller is not ordinarily in a fiduciary relationship with a buyer, so is not ordinarily obligated to disclose defects of which he may be aware but which are not the object of specific inquiry by a buyer. In this case, on the other hand, defendant categorically denied any water infiltration problems.
In O’Connell, supra, the Court held that a contractor could not recover for faulty geological data provided by the Commonwealth in his acceptance of a contract to build a highway bridge, where the Commonwealth had expressly disclaimed responsibility for the accuracy of the data and provided that “the contractor must satisfy himself by his own investigation and research regarding all such conditions.” The Court held that the contractor could not be reimbursed for its additional expense where the ledge turned out to be deeper underground than had been indicated on the data provided. In that case, however, unlike the case here, no misrepresentation claim was involved.
It is clear, moreover, that in Massachusetts, such “integration” and “exculpatory clauses” in a contract, absent intentional fraud, are enforceable, and constitute a bar to an action for any previous negligent misrepresentation. Sound Techniques, Inc. v. Hoffman, 50 Mass.App.Ct. 425, 432-33 (2000). It is also clear, however, that such clauses do not ordinarily bar a suit for intentional fraud, duress, or misrepresentation. Id., at 433-34. See also Bates v. Southgate, 308 Mass. 170, 182 (1941); Sheehey v. Lipton Industries, 24 Mass.App.Ct. 188, 193 (1987) (“as is” clause not a defense to deceit). Compare: Greenery Rehabilitation Group v. Antaramian, 36 Mass.App.Ct. 73 (1994) (such clauses may bar an action for intentional misrepresentation, but only where they are not (as here)[4] merely boilerplate provisions, but are specifically negotiated and intended to bar intentional misrepresentation claims).
In addition to arguing that the exculpatory clauses bar the plaintiffs’ misrepresentation claims, the defendant also asserts that these provisions negate an essential element of these claims, i.e., the element of reasonable reliance, again citing O’Connell, supra, which held that a plaintiff could not have reasonably relied on data which the defendant had specifically warned was not guaranteed as accurate. O’Connell, however, involved a negligence action, and in an action for misrepresentation, reliance is generally considered to be an issue to be decided by a juiy. See Nei v. Burley, 388 Mass. 307, 313 (1982); Williams et al. v. Watt et al., Civil No. 99-00696 (Worcester Super.Ct. April 5, 2002) (Locke, J.) [14 Mass. L. Rptr. 511).
It is true that the documents in this case similarly warned plaintiffs that defendant’s statements therein should not be uncritically relied on, and that plaintiffs were also represented by counsel. Plaintiffs did, however, take the reasonable precaution of having the unit inspected, and in my judgment, a juiy could find that, in spite of the exculpatoiy language, plaintiffs might reasonably have expected that defendant would not outright lie about her knowledge of water infiltration and then cover up water stains with paint, as alleged here.

ORDER

Accordingly, defendant’s motion for summary judgment is ALLOWED at to Count II (negligent misrepresentation) but is DENIED as to Count I (intentional misrepresentation).

The Purchase and Sale Agreement.

Mrs. Bookstein denied ever having seen the Statement of Condition. Mr. Bookstein admits that he received it, but refused to sign it.

In response to the question: “have you ever or are you currently experiencing any problems in the unit with the following? If yes, describe ... 10 any dampness anywhere?’’; defendant left blank the box for ‘yes” and “unknown,” but checked the box indicating “no.”

The exculpatory clauses in the documents here are standard language contained in the printed real estate forms which are customarily used by realtors.